[No. 34996-1-I.    Division One.    May 1, 1995.]

NORTHWEST STEELHEAD *and* SALMON COUNCIL OF TROUT UNLIMITED, ET AL., *Appellants*, v. DEPARTMENT OF FISHERIES, ET AL., *Respondents*.

*Toby Thaler*, for appellants.

*Brian Leonard*, amicus curiae for appellants.

*Neil Wise* and *David B. Johnson,* for respondents.

PEKELIS, J.* — Art Van Vliet, Northwest Steelhead and Salmon Council of Trout Unlimited (Trout Unlimited) appeal from a superior court order affirming the Department of Fisheries' (the Department)[1] approval of Rodney Bowen's (Bowen) application for hydraulic project approval (HPA) to construct a bridge across a Seattle creek. On appeal, Trout Unlimited appears to challenge the

---

*This opinion was filed after the appointment of Chief Judge Rosselle Pekelis to the Washington State Supreme Court, but it was signed by Judge Pekelis prior to her appointment.

[1]In 1994, the Department of Fisheries merged with the Department of Wildlife, forming the Department of Fish and Wildlife.

Department's decision on two primary bases, arguing that: (1) the Department erred in modifying certain findings of fact and conclusions of law entered by the Administrative Law Judge (ALJ) and (2) the Department erred in deferring the decision concerning the impact of Bowen's proposed house construction to the City of Seattle (the City), the lead agency under the State Environmental Policy Act (SEPA), in light of the Department's unique statutory mandate to preserve and protect fish life in state waters and in light of substantial evidence indicating that the City's mitigating conditions would be inadequate. We affirm.

Thornton Creek (the creek) is a heavily urbanized stream that flows into Lake Washington through northeast Seattle. Bowen owns an undeveloped, 7,286 square foot parcel of property, which has been designated as wetlands, adjacent to the creek. He proposed to construct a 2,422-square-foot single family residence upon the parcel. To access Bowen's parcel by vehicle would require the construction of a bridge across the creek.

On February 11, 1991, Bowen submitted to the Department an HPA application pursuant to RCW 75.20.100 seeking approval to construct a bridge across the creek. Based on the recommendation of one of its regional habitat managers, the Department initially denied Bowen's HPA application because "the proposed project would result in significant impacts to fish life in Thornton Creek due to elimination and disturbance of wetlands which are associated with the creek." On November 5, 1991, after Bowen informally appealed pursuant to WAC 220-110-340, the Department reversed its decision and issued an HPA to Bowen with several conditions relating to the bridge construction. On December 3, 1991, pursuant to WAC 220-110-350, Van Vliet, an owner of property adjacent to and downstream from Bowen's lot, and Trout Unlimited formally appealed the Department's approval of Bowen's HPA.

While the proceedings before the Department were

underway, the City was considering Bowen's master use permit application to construct a single family residence on the property. On May 23, 1991, the City, which was the lead agency under SEPA, *see* WAC 197-11-932, initially issued a declaration of nonsignificance (DNS). However, because the parcel was composed entirely of wetlands, the Department recommended that the City impose conditions to mitigate the impact of Bowen's house construction on the wetlands. As a result, the City issued a second DNS that contained numerous conditions aimed at minimizing the deterioration of the wetlands, including a fifteen-foot building setback requirement. In imposing this particular condition, the DNS explained:

> Because of a substantial increase in impervious surface area, surface water runoff is likely to increase as a result of the proposal. The Department of Fisheries recommends a minimum 25-foot setback from the creek bank for residences in environmentally sensitive floodplain areas. However, imposition of such a requirement would leave no buildable land for the residence. Such hardship was deemed inappropriate in this case, since many other existing homes in the area are sited within 25 feet of the creek. It is appropriate, however, to condition the permit so that any structure on the site shall be set back from the creek a minimum distance of 15 feet. The 15 foot setback shall include the ten foot wide non-disturbable setback.

In addition, the City required Bowen, inter alia, to: (1) implement an approved erosion control plan; (2) implement an approved revegetation plan; (3) implement an approved drainage control plan; and (4) install a grass crete driveway.

Van Vliet appealed the City's DNS decision, which the City's hearings examiner upheld, concluding:

> [The City] has, through its conditioning, addressed the major concerns of drainage and water quality that arise out of the current proposal. Those conditions, if properly complied with, should protect the water quality of Thornton creek and the viability of the habitat it provides. . . .

Trout Unlimited concedes that it did not appeal the hearing examiner's decision "due to procedural errors."

Meanwhile, Trout Unlimited's administrative appeal of the Department's approval of Bowen's HPA proceeded. In May 1992, the ALJ issued its initial decision denying the HPA. The ALJ found that although it was rare to see anadromous fish in Thornton Creek due to the impacts of urbanization, several such fish had been observed in the creek immediately downstream from Bowen's proposed bridge location in February and March 1992. In addition, the ALJ found that the City's prior condition requiring a 15-foot setback for Bowen's proposed house construction was insufficient to protect the anadromous fish in the creek, noting that a 100-foot setback is typical, "particularly when the intervening 100 feet consist entirely of wetland."

Although the ALJ found that Bowen's proposed bridge construction as conditioned would not have a direct impact on the creek, it found that Bowen's proposed house construction

> would result in significant negative impact to fish life in Thornton Creek due to elimination and disturbance of wetlands which are associated with the creek. The conditional Master Use permit issued by the City of Seattle purports to mitigate the impact of the project. However, partly because of the small size of the parcel, meaningful mitigation is not feasible.

In its decision, the ALJ acknowledged that the City, as the lead agency under SEPA, had concurrent jurisdiction over the wetlands on Bowen's property. However, the ALJ concluded that the Department was obligated to exercise its jurisdiction over the wetlands to protect fish life once it became apparent that Bowen's proposed house construction, as conditioned by the City, would be inadequate to protect the fishery. The ALJ concluded:

> Inasmuch as the Department is convinced that a setback of 100 feet is required to protect fish life in Thornton Creek, the HPA issued to Mr. Bowen must be withdrawn. The Department may not fail to exercise its jurisdiction over wetlands when the overwhelming evidence has convinced it that an error was made by the lead SEPA agency. RCW 75.08.012 and RCW 75.20.100.

On June 15, 1992, the Department petitioned for administrative review of the ALJ's initial decision, arguing that the ALJ's initial decision contained numerous factual and legal errors. In particular, the Department argued that it had properly deferred to the City's concurrent SEPA jurisdiction to regulate wetlands after it had conferred with the City about its initial DNS designation and recommended imposing conditions to mitigate the impacts associated with the proposed house construction on wetlands.

On July 17, 1992, the Acting Department Director (the Director) modified several of the ALJ's findings of fact and conclusions of law and granted Bowen's HPA application to construct the bridge across the creek "pursuant to the terms of his Conditional Master Use permit from the City of Seattle." The Director entered the following modified findings of fact to which Trout Unlimited assigns error:

> If this particular wetland is taken out of the system, it may help to generate higher peak flows and lower minimum flows. Thornton Creek is subject to such high flows in any event that with this one parcel taken out of the system it will probably not have much impact in the high flows in this area. Juvenile salmonids try to stay in the system all summer. Cool water temperatures are important for juveniles. DCLU, the lead SEPA agency, has set a 15-foot setback as a mitigation measure. Arguably this may be insufficient.

> Although the proposed bridge will have no significant impact on the fish life in Thornton Creek, the construction of the single family dwelling on the wetlands may. The conditional Master Use permit issued by the City of Seattle purports to mitigate the impact of the project. It is the position of [the City] that the new conditions, if properly complied with, should protect the water quality of Thornton Creek and the viability of the habitat it provides.

> The Department argued quite forcibly at the hearing that it has jurisdiction over all wetlands in the state. The Department gets involved in just about every kind of activity that can actually or potentially impact fish or shellfish habitat in this state. However, as a practical matter, the Department does not have enough employees to intervene in all cases involving wetlands. For projects that require licenses from

more than one agency, and one of the agencies, as here, is a county or city, the lead agency shall be the county or city. WAC 197-11-952. The Department thus properly deferred to [the City] on the issuance of the Master Use permit.

The Director also entered the following modified conclusions of law to which Trout Unlimited assigns error:

However, such a restricted viewpoint of the Department's jurisdiction would not enable it to comply with the mandate of the Legislature to "preserve, protect, perpetuate and manage the food fish and shellfish in state waters and offshore waters." Wetlands are crucial to preserving, protecting, perpetuating and managing the food fish and shellfish in state waters and offshore waters. Thus, activities in wetlands that have an effect on fish life fall within the jurisdiction of SEPA agencies.

The Department followed the SEPA rules and allowed the City of Seattle to assume lead agency status. The City of Seattle, by issuing a conditional permit that required Mr. Bowen to obtain Hydraulic Project Approval for the bridge, did not cede jurisdiction over the wetlands to the Department. Instead, they deferred to the Department only over the issue of bridge construction. Accordingly, the City of Seattle retained its jurisdiction over the wetlands and the construction therein, and conditioned this construction to protect fish life in Thornton Creek. The Department did not object to the conditions established by the lead SEPA agency, and does not do so at this time.

Van Vliet and Trout Unlimited sought judicial review of the Department's final order, which the superior court affirmed. After the Washington Supreme Court denied review, Trout Unlimited's appeal was transferred to this court.

On appeal, Trout Unlimited first contends that the Department erred in modifying certain findings of fact and conclusions of law entered by the Administrative Law Judge (ALJ) in its initial decision, concluding that Bowen's house construction on a parcel designated as wetlands would have unmitigable impacts on fish life. It is Trout Unlimited's position that the Department first must show that the ALJ's initial findings are not supported by substantial evidence before the ALJ's findings and conclusions can be modified.

▮▮ Under the Washington Administrative Procedure Act (APA), which governs judicial review of this final administrative decision, a reviewing court may reverse an administrative decision, inter alia, when: (1) the decision is based on an error of law; (2) the decision is not based on substantial evidence in the record; or (3) the decision is arbitrary and capricious. RCW 34.05.570(3); *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). In reviewing an administrative action, an appellate court sits in the same position as the superior court, applying the APA standards directly to record before the agency. *Id.* at 402. The party challenging the validity of the agency's action bears the burden of demonstrating the alleged invalidity. RCW 34.05.570(1)(a); *Evans v. Employment Sec. Dep't*, 72 Wn. App. 862, 865, 866 P.2d 687 (1994).

RCW 34.05.464 governs agency review of initial orders. At issue in this case is RCW 34.05.464(4), which provides:

> The officer reviewing the initial order (including the agency head reviewing an initial order) is, for the purposes of this chapter, termed the reviewing officer. *The reviewing officer shall exercise all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing,* except to the extent that the issues subject to review are limited by a provision of law or by the reviewing officer upon notice to all the parties. In reviewing findings of fact by presiding officers, the reviewing officers shall give due regard to the presiding officer's opportunity to observe the witnesses.

(Emphasis added.)

In *Tapper*, 122 Wn.2d at 404-06, the court held that RCW 34.05.464(4) authorizes agency heads to substitute their own findings of fact for those made by hearings officers.

▮▮ Under *Tapper*, it is clear that the Department Director was authorized under RCW 34.05.464(4) to substitute his own findings of fact for those of the ALJ. Given this authorization, there simply is no need for agency heads to provide reasons for modifying a hearings

officer's findings. The only requirement is that the agency head's substituted findings be supported by substantial evidence in the record. *See* RCW 34.05.570(3)(e). In addition, because RCW 34.05.464(4) provides the agency head with "all the decision-making power that the reviewing officer would have had to decide and enter the final order," it follows that the agency head also may substitute his or her own conclusions of law for those made by the hearings officer.

Based on the foregoing, it is clear that RCW 34.05.464(4) authorized the Acting Department Director to substitute his own findings of fact and conclusions of law for those of the ALJ, without also being required to prove that the ALJ's findings were *not* supported by substantial evidence. Rather, the relevant inquiry in such a situation is whether the Department's substituted findings themselves are supported by substantial evidence and whether those findings, in turn, support the conclusions of law. Because Trout Unlimited has failed to meet its burden of showing that the Director's substituted findings are not supported by substantial evidence, our above analysis disposes of the issue.

Trout Unlimited and Washington Environmental Council, Friends of the Earth, Washington Trout, and Thornton Creek Alliance, amici, next contend that the Department erred as a matter of law in deferring decisions concerning the impact of Bowen's proposed house construction to the City, the lead agency under SEPA. They contend that the Department could not defer to the City because of its statutory mandate to preserve and protect fish life in state waters and because of substantial evidence indicating that the City's mitigating conditions would be inadequate.[2]

Questions of law are reviewed de novo, RCW 34.05.570(3)(d), although substantial weight is given to the

---

[2]We reject amici's attempt to supplement the record with the two exhibits attached to its brief. The requirements for taking new evidence not contained in the agency record have not been met. *See* RCW 34.05.562.

agency's view of the law if it falls within the agency's expertise in that special field of law. *Evans*, 72 Wn. App. at 865; *Macey v. Employment Sec. Dep't*, 110 Wn.2d 308, 318, 752 P.2d 372 (1988).

The Department is mandated to "preserve, protect, perpetuate and manage the food fish" in state waters. RCW 75.08.012. The Department has jurisdiction over wetlands adjacent to state waters that affect the natural flow of such waters. RCW 75.20.100. In deciding to grant or deny a HPA application, the Department's sole concern is to protect fish life. However, "approval shall not be unreasonably withheld." RCW 75.20.100.

█ It is undisputed that the City was the lead agency under SEPA for the purposes of evaluating Bowen's home construction project. *See* WAC 197-11-932. Under WAC 197-11-660, the City was authorized to impose conditions on the project to mitigate environmental impacts. Upon reviewing the City's DNS designation, the Department had *the option* to assume lead agency status. WAC 197-11-948(1).

We reject Trout Unlimited and amici's bald assertion that the Department's deference to the City regarding decisions concerning the impact of Bowen's proposed house construction was erroneous. Although the Department has a broad mandate to preserve and to protect fish life in state waters, Trout Unlimited and amici fail to cite any authority requiring the Department to assume lead agency under the circumstances present in this case.

Here, the Department decided to defer the matter of Bowen's house construction to the City because of insufficient resources to intervene in each case over which it has concurrent jurisdiction. However, in deferring to the City on this issue, it is significant that the Department did not ignore its mandate under RCW 75.08.012. In response to the City's issuance of the first unconditioned DNS, the Department consulted with City about reducing the impact to the wetlands comprising the site. In an effort to address the Department's concerns, the City issued a

second DNS, which contained numerous conditions specifically aimed at minimizing the impact on the wetlands.[3]

Furthermore, we note that the appropriate forum to raise the issue of the adequacy of the City's wetlands conditions for Bowen's house construction would have been in a review proceeding of the City's DNS. In fact, Trout Unlimited did obtain review of the City's DNS, but failed to persuade the hearings examiner that the City's wetlands conditions were inadequate. Trout Unlimited could have appealed the hearings examiner's decision to superior court, but apparently was unable to do because of procedural errors below. It would be inappropriate for this court now to review the City's DNS designation.

In sum, the Department did not err in substituting its findings of fact and conclusions of law for those of the ALJ nor did it err in refusing to exercise its concurrent SEPA jurisdiction with respect to Bowen's house construction project under the circumstances presented here.

Affirmed.

KENNEDY, A.C.J., and GROSSE, J., concur.

---

[3]We note that in its final order approving Bowen's HPA application for the bridge construction, the Department expressly did not object to these conditions.