IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| CITY OF PUYALLUP, a Washington municipal corporation, | No. 51501-6-II |
| Appellant, | |
| v. | |
| PIERCE COUNTY, a Washington Governmental Unit; KNUTSTON FARMS, INC. and RUNNING BEAR DEVELOPMENT PARTNERS, LLC, | PUBLISHED OPINION |
| Respondents. | |

JOHANSON, J.P.T.[*] — The City of Puyallup appeals a superior court's summary judgment dismissal of its complaint in this land use action. The superior court granted the Respondents'[1] motion to dismiss, ruling that the City did not have jurisdiction to assume State Environmental Policy Act (SEPA), ch. 43.21C RCW, lead agency status under WAC 197-11-948. The City argues that (1) it is an "agency with jurisdiction" under WAC 197-11-948 and (2) it may assume lead agency status following the issuance of a mitigated determination of nonsignificance (MDNS).

---

[*] Judge Jill M. Johanson is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW 2.06.150.

[1] We collectively refer to Pierce County; Knutson Farms, Inc.; and Running Bear Development Partners, LLC as Respondents.

The City also asserts that the superior court erred in considering a declaration that contained legal opinions and asks us not to do so.

We hold that under the plain meaning of the applicable regulations, (1) the City is an "agency with jurisdiction" that can assume lead agency status under WAC 197-11-948 and (2) as an "agency with jurisdiction" it may assume lead agency status following the issuance of an MDNS. In reaching our decision, we do not consider legal opinions contained in a declaration. Accordingly, we reverse.

FACTS

I. KNUTSON PROJECT

On November 26, 2014, Knutson Farms Inc. and Running Bear Development Partners LLC (collectively Applicants) applied to Pierce County for approval to develop a warehouse, distribution, and freight movement complex in what is farmland in unincorporated Pierce County. The Knutson Farms Industrial Park (hereinafter Knutson project) is a 162-acre site that is approximately 2.6 million square feet and includes construction of seven warehouses, as well as parking lots and ancillary facilities.

The property borders the City's limits and is adjacent to the Puyallup River. No portion of the site is in the City limits, but the site is within the City's Growth Management Urban Growth Area. Clerk's Papers (CP) at 582 (Declaration of City Development Services Director) ("the project site will by law ultimately become part of the City"). The Knutson project site is within the City's sewer area, and a portion of the site is in the City's water service area.

The Knutson project will require approximately 5,600 more vehicles on the roads each weekday. The SEPA environmental checklist[2] for the project states that "[n]ew on-site private roads will be constructed as part of the development as well as roadway improvements along 5th *Avenue S.E., 80th Street East* and the portion of 134th Avenue East which will not to [sic] be vacated." CP at 144. These are city roads. The SEPA checklist also lists that "Sewer and Water Utility Permits by City of Puyallup and Valley Water Districts" are "anticipated for this project." CP at 131.

Pierce County issued notices describing the project and received comments from many parties with concerns that the project was too close to the Puyallup River and in a flood prone area. These parties included the Washington State Department of Fish and Wildlife, the Muckleshoot and Puyallup tribes, and the County's Public Works and Surface Water Management Departments. The City and the City of Sumner shared these concerns as well as additional concerns that the project would generate increased traffic.[3]

On June 22, 2016, the City offered to serve as a co-lead agency under WAC 197-11-944.[4] The County's Planning Director declined the request for co-lead, but said, "[T]he review process for this project will be robust and will provide ample opportunities for other jurisdictions and the

---

[2] "Agencies shall use the environmental checklist substantially in the form found in WAC 197-11-960 to assist in making threshold determinations for proposals." WAC 197-11-315(1).

[3] In September 2016, in response to comments, the Applicants reduced the project from a 187-acre site to a 162-acre site and from over 3 million square feet to approximately 2.6 million square feet. The Applicants also moved the project farther away from the Puyallup River.

[4] "Two or more agencies may by agreement share or divide the responsibilities of lead agency through any arrangement agreed upon." WAC 197-11-944.

3

public to comment." CP at 253. The City cautioned that it would, if necessary, assume SEPA lead agency status under WAC 197-11-948.

As required by the Pierce County Code and the County's environmental review under SEPA, the Applicants obtained and submitted professionally prepared studies analyzing the potential impacts and mitigation measures including a traffic impact analysis; a critical areas assessment report; flood surveys and studies including a flood boundary delineation survey, conceptual flood plain compensatory storage plan, compensatory flood plain volume table, and flood plain cross sections; a preliminary storm drainage report; and a geotechnical engineering report.

## II.  MITIGATED DETERMINATION OF NONSIGNIFICANCE

On April 26, 2017, the County issued an MDNS.  The MDNS stated that it was "issued under WAC 197-11-340(2)," CP at 280, and that the County "has determined that the proposal will not have a probable significant impact on the environment, and an Environmental Impact Statement (EIS) will not be required under RCW 43.21C.030(2)(c), <u>only if the following conditions are met</u>."  CP at 278 (alteration in original).

The conditions relating to city roadwork state,

- *If not already constructed, the applicant will design and construct 5th Avenue SE to City of Puyallup roadway standards* between Shaw Road East and 33rd Street SE prior to final building inspection on the first building in the Knutson Farms Short Plat.
- *The applicant will design and construct roadway improvements to 33rd Street SE (134th Avenue East) south of 5th Avenue SE to 80th Street East to City of Puyallup road standards* prior to final building inspection on the first building in the Knutson Farms Short Plat.
- *If not already constructed, the applicant will design and construct roadway improvements to 134th Avenue East north of 5th Avenue SE within the Puyallup City limits.*  The applicant will design and construct the necessary road improvements to gain access to Shaw Road East, as well as the full

> street improvements along 134th Avenue East north of 5th Avenue SE consisting of 32 feet of pavement width (two 12-foot lanes with 4-foot paved shoulders), curb/gutter, and 6-foot wide sidewalks prior to the final building inspection on the first building.
>
> - *The applicant will design and construct a traffic signal at the Shaw Road East/5th Avenue SE intersection* prior to occupancy of the first building.

CP at 155, 279 (emphasis added).[5]

### III. NOTICE OF ASSUMPTION OF LEAD AGENCY STATUS

On May 10, the City issued a "Notice of Assumption of Lead Agency Status" "[p]ursuant to WAC 197-11-948 and 985." CP at 186. The same day, the City issued a "Determination of Significance (DS) and a Request for Comments on Scope of EIS."

On May 16, the county executive responded to the City's actions and said that the "County clearly has jurisdiction and will not recognize the City's extrajudicial action." CP at 193, 289. On May 22, the County issued a "Written Order" to approve the application for the project.

### IV. LAWSUIT PROCEDURAL BACKGROUND

The Respondents appealed the City's assumption of lead agency status and the City's notice of its DS to the Puyallup Hearing Examiner. The City appealed the County's MDNS to the Pierce County Hearing Examiner. These appeals were stayed pending resolution of the City's lawsuit filed in superior court discussed below.

On May 25, the City filed a complaint and petition in superior court against the Respondents to resolve the jurisdictional dispute. The parties filed cross motions for summary judgment regarding the validity of the City's SEPA lead agency assumption. Respondents

---

[5] Additional conditions include payment of impact fees to Puyallup and the City of Sumner, restricting traffic to certain corridors, and the creation of an additional traffic impact study if land use types and sizes change.

supported their summary judgment motion, in part, with a declaration from Richard Settle, an attorney. The City objected to the Settle declaration and asked the superior court not to consider it.

After hearing oral argument on the motions, the superior court denied the City's summary judgment motion and granted the Respondents' motion. The superior court determined that under WAC 197-11-948, the City was not authorized to assume lead agency status over the proposal. Thus, it ruled that the City was not authorized to issue the notice of assumption of lead agency status and the DS. The superior court said that it considered the Settle declaration in reaching its decision. The City moved for reconsideration, which the superior court denied. The City appeals.

ANALYSIS

I. SEPA FRAMEWORK

The legislature enacted SEPA in 1971 to "'promote the policy of fully informed decision making by government bodies when undertaking major actions significantly affecting the quality of the environment.'" *Moss v. City of Bellingham*, 109 Wn. App. 6, 14, 31 P.3d 703 (2001) (internal quotation marks omitted) (quoting *Norway Hill Pres. & Prot. Ass'n v. King County Council*, 87 Wn.2d 267, 272, 552 P.2d 674 (1976)). SEPA lays out procedures for review of environmental impacts by a lead agency. WAC 197-11-050. For private projects that require licenses from more than one agency where one of the agencies is a county or city, "the lead agency shall be that county/city within whose jurisdiction is located the greatest portion of the proposed project area, as measured in square feet." WAC 197-11-932. The lead agency must make a "threshold determination" (RCW 43.21C.033(1)) and determine if a proposal "has any probable significant adverse environmental impacts." WAC 197-11-330(5), -310. An impact is

"significant" if there is "a reasonable likelihood of more than a moderate adverse impact on environmental quality." WAC 197-11-794(1).

The lead agency conducts a preliminary investigation in order to make a threshold determination, which includes reviewing an environmental checklist that provides information about the proposal. WAC 197-11-315, -960. If the responsible official[6] of the lead agency determines that the proposal "may have a probable significant adverse environmental impact," then the lead agency will issue a threshold "determination of significance (DS)." WAC 197-11-360(1). A DS requires the preparation of an EIS. WAC 197-11-980. An EIS provides an impartial discussion of environmental impacts and alternatives to a proposal and informs decision makers and the public. WAC 197-11-400. The EIS process allows "government agencies and interested citizens to review and comment on proposed government actions, including government approval of private projects and their environmental effects." WAC 197-11-400(4).

If the responsible official concludes that the proposal will not have a probable significant adverse environmental impact, then the lead agency will issue a "determination of nonsignificance (DNS)." WAC 197-11-340(1). A DNS does not require an EIS. WAC 197-11-330; WAC 197-11-970.

Under WAC 197-11-350, the lead agency may impose mitigation conditions on an applicant's proposal to reduce impacts. A DNS with mitigated conditions is called an MDNS. WAC 197-11-350, -766. A formal EIS is not required with an MDNS. *Anderson v. Pierce County*,

---

[6] "'Responsible official' means that officer or officers, committee, department, or section of the lead agency designated by agency SEPA procedures to undertake its procedural responsibilities as lead agency." WAC 197-11-788.

86 Wn. App. 290, 301, 936 P.2d 432 (1997) ("With [an] MDNS, promulgation of a formal EIS is not required, although . . . environmental studies and analysis may be quite comprehensive."); *see* WAC 197-11-350.

After a lead agency has issued a DNS, an "agency with jurisdiction" over the proposal or part of the proposal may assume lead agency status under WAC 197-11-948 and make its own threshold determination. *See also* WAC 197-11-600(3)(a) (an agency "dissatisfied with the DNS . . . may assume lead agency status" under WAC 197-11-948). An "agency with jurisdiction" is "an agency with authority to approve, veto, or finance all or part of a nonexempt proposal (or part of a proposal)." WAC 197-11-714(3). There can be more than one "agency with jurisdiction" over a proposal. *See* WAC 197-11-340(2)(a)(i), -942, -948.

## II. STANDARD OF REVIEW

We review a superior court's grant or denial of summary judgment de novo. *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 80, 90, 392 P.3d 1025 (2017). When reviewing an order granting summary judgment, we view the facts in the light most favorable to the nonmoving party. *Columbia Riverkeeper*, 188 Wn.2d at 90. "'Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Columbia Riverkeeper*, 188 Wn.2d at 90 (quoting *Save Our Scenic Area v. Skamania County*, 183 Wn.2d 455, 463, 352 P.3d 177 (2015)).

We also review questions of law including statutory and regulatory interpretation de novo. *Columbia Riverkeeper*, 188 Wn.2d at 90. When interpreting administrative regulations, we use rules of statutory construction. *Columbia Riverkeeper*, 188 Wn.2d at 90. Our objective is to determine and give effect to legislative intent. *Columbia Riverkeeper*, 188 Wn.2d at 91. If the

statute is plain on its face, we give effect to the plain meaning "as a pronouncement of legislative intent." *Columbia Riverkeeper*, 188 Wn.2d at 91. In order to determine a statute's plain meaning, we may look to the "'context of the entire act as well as any related statutes which disclose legislative intent about the provision in question.'" *Columbia Riverkeeper*, 188 Wn.2d at 91 (internal quotation marks omitted) (quoting *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014)). A statute that is subject to more than one interpretation is ambiguous and we may look to statutory construction, legislative history, and case law to determine the legislative intent. *Columbia Riverkeeper*, 188 Wn.2d at 91.

### III. SETTLE DECLARATION

As a threshold issue, the City argues that the superior court erred by considering Settle's declaration because it is a legal opinion. The City asks that we disregard the entire declaration on review. Respondents argue that Settle's declaration is not a legal conclusion but that it instead provides the court with the historical implementation of the SEPA rules. Respondents also argue that the superior court's consideration of the declaration is not grounds for reversal because the superior court never reached the issue of whether an MDNS is the same as a DNS under WAC 197-11-948. To the extent that the Settle declaration contains legal opinion, we do not consider it.

### A. PRINCIPLES OF LAW

When ruling on a summary judgment motion, a superior court may not consider inadmissible evidence. *Ebel v. Fairwood Park II Homeowners' Ass'n*, 136 Wn. App. 787, 790, 150 P.3d 1163 (2007). Declarations "shall be made on personal knowledge" and "shall set forth such facts as would be admissible in evidence." CR 56(e). "Experts may not offer opinions of law in the guise of expert testimony." *Stenger v. State*, 104 Wn. App. 393, 407, 16 P.3d 655

(2001). "Courts will not consider legal conclusions in a motion for summary judgment." *Ebel*, 136 Wn. App. at 791.

### B. SETTLE'S LEGAL OPINION

Settle is a practicing attorney and professor who has dedicated much of his career working with SEPA, and he has authored two treatises on the subject. In paragraphs 22 to 25 of his declaration, Settle gives a legal opinion on one of the ultimate legal issues—whether the assumption of lead agency status can occur after the issuance of an MDNS. To the extent Settle's declaration contains legal opinions, we disregard it.

### IV. AGENCY WITH JURISDICTION

The City argues that it is an "agency with jurisdiction" over the Knutson proposal under WAC 197-11-948 based on the plain meaning of the regulations because "it has authority to approve, veto, or finance parts of the proposal."[7] Br. of Appellant at 17. Specifically, the City argues that (1) it has approval authority over the proposal's roadwork and (2) it has approval authority over the proposal's water and sewer services.

The Respondents argue that the City is not an "agency with jurisdiction" over the Knutson proposal under WAC 197-11-948. They contend that the roadwork is not part of the proposal and that permitting authority from imposed environmental mitigation does not make the City an "agency with jurisdiction." They also argue that "[t]he status of 'agency with jurisdiction' is not

---

[7] The City assigns error to the superior court's denial of the City's motion for reconsideration. However, because this assignment of error is not supported by argument or authority, we do not consider it. *Bercier v. Kiga*, 127 Wn. App. 809, 824, 103 P.3d 232 (2004).

conferred upon services providers" providing water and sewer and that these services are "proprietary" rather than "regulatory." Joint Br. of Resp'ts at 29.

We agree with the City that based on the plain meaning of the regulation, the City is an "agency with jurisdiction" under WAC 197-11-948 because it has approval authority over the roadwork. Additionally, we agree that the City is an "agency with jurisdiction" under WAC 197-11-948 because it has approval authority over the water and sewer services.

### A. PRINCIPLES OF LAW

WAC 197-11-948(1) provides, "An agency with jurisdiction over a proposal, upon review of a DNS (WAC 197-11-340) may transmit to the initial lead agency a completed "Notice of assumption of lead agency status." SEPA regulations define an "agency with jurisdiction" as

> *an agency*[8] *with authority to approve, veto, or finance all or part of a nonexempt proposal (or part of a proposal).* The term does not include an agency authorized to adopt rules or standards of general applicability that could apply to a proposal, when no license[9] or approval is required from the agency for the specific proposal. The term also does not include a local, state, or federal agency involved in approving a grant or loan, that serves only as a conduit between the primary administering agency and the recipient of the grant or loan. Federal agencies with jurisdiction are those from which a license or funding is sought or required.

---

[8] "Agency" is defined as "any state or local governmental body, board, commission, department, or officer authorized to make law, hear contested cases, or otherwise take the actions stated in WAC 197-11-704, except the judiciary and state legislature. An agency is any state agency (WAC 197-11-796) or local agency (WAC 197-11-762)." WAC 197-11-714(1).

[9] WAC 197-11-760 defines "license" as
> any form of written permission given to any person, organization, or agency to engage in any activity, as required by law or agency rule. A license includes all or part of an agency permit, certificate, approval, registration, charter, or plat approvals or rezones to facilitate a particular proposal. The term does not include a license required solely for revenue purposes.

11

No. 51501-6-II

WAC 197-11-714(3) (emphasis added); *see also Bellevue Farm Owners Ass'n v. Shorelines Hr'gs Bd.*, 100 Wn. App. 341, 352 n.26, 997 P.2d 380 (2000) (citing WAC 197-11-714(3) and stating that "[a]n agency has jurisdiction if it must issue permits or approvals for the project").

A proposal is "a proposed action" and "*includes both actions and regulatory decisions of agencies as well as any actions proposed by applicants*." WAC 197-11-784 (emphasis added).

> A proposal exists at that stage in the development of an action when an agency is presented with an application, or has a goal and is actively preparing to make a decision on one or more alternative means of accomplishing that goal, and the environmental effects can be meaningfully evaluated.

WAC 197-11-784.

1.   CITY'S APPROVAL AUTHORITY OVER ROADWORK

     a.   MDNS AND SEPA CHECKLIST – ROADWORK

The City argues that based on the plain language of the regulations, it is an "agency with jurisdiction" over the Knutson proposal because it has authority to "approve . . . parts of the proposal" that require road improvements and construction. Br. of Appellant at 17; *see* WAC 197-11-714(3), -948. The City argues that these road improvements and construction meet the definition of a proposal, which includes *"*both actions and regulatory decisions of agencies as well as any actions proposed by applicants." WAC 197-11-784. Respondents argue that the road improvements and construction are not part of the proposed Knutson project because they are imposed mitigation conditions and because the road construction will inevitably occur anyway. Therefore, the Respondents assert that the City is not an "agency with jurisdiction." We agree with the City that it is an "agency with jurisdiction" because it has approval authority over the road improvements and construction.

12

The Knutson proposal is dependent on altering and constructing city roads, intersections, and sidewalks. This is reflected in the County's MDNS.

The MDNS is conditioned on the design and construction of a new city road, new city road improvements, and a new city traffic signal. For example, one condition in the MDNS for the Knutson proposal states, "If not already constructed, the applicant will design and construct 5th Avenue SE to City of Puyallup roadway standards between Shaw Road East and 33rd Street SE." CP at 155. The City argues that it must issue permits or approvals for the new road construction and improvements under the Puyallup Municipal Code (PMC), and therefore it is an "agency with jurisdiction" over part of the proposal based on the plain meaning of the regulations. *See Bellevue Farm Owners Ass'n*, 100 Wn. App. at 352 n.26 (citing WAC 197-11-714(3) and stating that "[a]n agency has jurisdiction if it must issue permits or approvals for the project").

The PMC supports the City's argument because it requires a "person, firm, corporation or other legal entity" to obtain a written permit from the city engineer before altering, repairing, removing, or constructing any roadwork within the city limits. PMC 11.04.010(1); *see also* PMC 11.16.010-.020 (provisions for use of city curbs or sidewalks and permits for specified activities); ch. 21.14 PMC (provisions for clearing, filling, and grading for street construction).

The Respondents agree that "City roads will be used for access to the Knutson Farms property." Joint Br. of Resp'ts at 25. They argue, however, that the road improvements are urban services utilized by the users of the project and that these are conditions in the MDNS to "mitigate the proposal's traffic impacts" but they are not part of the proposal itself. Joint Br. of Resp'ts at 25. Respondents contend that an "agency with jurisdiction" does not include agencies merely impacted by a proposal.

13

The City responds by asserting that the regulations broadly define a "proposal" to include "both actions and regulatory decisions of agencies as well as any actions proposed by applicants."[10] WAC 197-11-784. Additionally, the City argues that this roadwork is part of the proposal and are not just "conditions in the [MDNS]" because the Applicants submitted changes to and construction of the streets as part of the proposal before the County issued the MDNS. Reply Br. of Appellant at 7. The City notes that the initial SEPA checklist and transportation impact required alteration and construction of roads as part of the development plan. Additionally, the City argues that the conditions attached to the MDNS are proposals because they are "'a proposed action . . . includ[ing] . . . regulatory decisions of agencies.'" Reply Br. of Appellant at 6 (quoting WAC 197-11-784).

As with statutory interpretation, when a regulation is clear and unambiguous on its face, we give effect to that plain meaning. *Overlake Hosp. Ass'n. v. Dep't of Health*, 170 Wn.2d 43, 52, 239 P.3d 1095 (2010). "In ascertaining a regulation's plain meaning, we also consider the context in which the regulation appears, related regulations and statutes, and the statutory scheme of which the regulation is a part." *Bravern Residential II, LLC v. Dep't of Revenue*, 183 Wn. App. 769, 777, 334 P.3d 1182 (2014).

---

[10] Although the parties do not argue this, WAC 197-11-350 (discussing the procedure for an MDNS) provides that "[t]he purpose of this section is to allow clarifications or changes to a *proposal*." (Emphasis added.) The regulation also states that "if the lead agency specifies mitigation measures on an applicant's *proposal* that would allow it to issue a DNS, and the *proposal* is clarified, changed, or conditioned to include those measures, the lead agency shall issue a DNS." WAC 197-11-350 (emphasis added). This supports our conclusion that mitigation measures are part of the proposal.

We can decide this issue based on the plain meaning of WAC 197-11-948 as well as related regulations because the City has "authority to approve, veto, or finance all or part of [the] proposal"—specifically because the City has approval authority over the changes to and construction of the roads required for the project. WAC 197-11-714(3). The roads are "part of [the] proposal." WAC 197-11-714(3). "A proposal includes both actions and regulatory decisions of agencies as well as any actions proposed by applicants." WAC 197-11-784. "A proposal exists . . . when an agency is presented with an application, or has a goal and is actively preparing to make a decision on one or more alternative means of accomplishing that goal, and the environmental effects can be meaningfully evaluated." WAC 197-11-784.

The Applicants submitted changes to and construction of the city streets as part of the proposal even before the County issued the MDNS. The initial SEPA checklist and transportation impact required alteration and construction of roads as part of the development plan. This part of the proposal was an action proposed by the Applicants. *See* WAC 197-11-784. Additionally, the County, as lead agency, required road improvements in its MDNS. This is an "action[] and regulatory decision[]" of the agency. WAC 197-11-784. As a result, we hold that based on the plain meaning of the regulation, the road improvements are part of the proposal and the City is an "agency with jurisdiction" because it has authority to approve part of the proposal.

b.     ALREADY COMPLETED ROADWORK

Furthermore, the Respondents argue that most of the road improvements contemplated for the Knutson project will already be completed as part of another proposed project, the Schnitzer West project, and therefore they are not part of the Knutson project proposal. The MDNS for the

Schnitzer West project requires construction of 5th Avenue SE as a fully functioning two-way road from Shaw Road to 33rd Street SE, including the Shaw Road intersection.

Respondents cite to the traffic analysis submitted by Applicants, which says that street improvements will occur "'if [the Knutson Project] develops prior to the Van Lierop industrial project [aka Schnitzer West].'" Joint Br. of Resp'ts at 26 (underlining omitted) (last alteration in original). They also cite to the MDNS, which says, "'*If not already constructed*, the applicant will design and construct 5th Avenue SE to City of Puyallup roadway standards between Shaw Road East and 33rd Street SE.'" Joint Br. of Resp'ts at 27 (emphasis added). They contend, "Knutson's participation in road construction is more akin to participation in traffic impact fees." Joint Br. of Resp'ts at 27. They state that the impacts to the City are already being addressed through the County's SEPA process.

In reply, the City argues that even if some of these road improvements are part of the Schnitzer West development, that development does not negate the City's permitting authority over the roads and does not negate the need for SEPA review.

We agree with the City because the City's permits are necessary for the roadwork the Knutson project requires. Further, nothing in the record supports the Respondent's argument that most of the roadwork will already be completed as part of another project.[11] Thus, the Respondents' arguments that the roadwork will already be completed are unpersuasive.

---

[11] It is unclear if or when the Schnitzer West project will be completed. The Schnitzer West development is currently in litigation. *See Schnitzer W., LLC v. City of Puyallup*, 190 Wn.2d 568, 416 P.3d 1172 (2018).

In conclusion, we hold that based on the plain meaning of WAC 197-11-948, the City is an "agency with jurisdiction" over the Knutson proposal because it has authority to approve the required roadwork that is part of the proposal.

2.      CITY'S APPROVAL AUTHORITY OVER WATER AND SEWER SERVICES

a.      THE CITY IS AN AGENCY WITH JURISDICTION BASED ON SEWER AND WATER SERVICE APPROVALS

The City argues that it is also an "agency with jurisdiction" because it has authority to "approve, veto, or finance sewer and water service for the Knutson proposal." Br. of Appellant at 18. Respondents argue that the City is acting as a "service provider[ ]" and in a "proprietary capacity," which does not make it an "agency with jurisdiction." Joint Br. of Resp'ts at 29. We agree with the City and hold that the City is also an "agency with jurisdiction" based on its approval authority over the sewer and water services.

The Knutson project is within the City's service area for sewer and is partially within the City's service area for water. The City notes that the Applicants' SEPA checklist names water and sewer service as among the "'approvals or permits'" needed for the "'proposal.'" Br. of Appellant at 18. The City also notes that the PMC requires that an "'applicant that seeks water or sewer service from the city outside Puyallup's city limits, but within the city's service area, shall submit a written application to the city for such service.'" Br. of Appellant at 18 (quoting PMC

17

14.22.020); PMC 14.22.050. The City cites to PMC 14.22.050,[12] *Yakima County (West Valley) Fire Protection District No. 12 v. Yakima*, 122 Wn.2d 371, 383, 858 P.2d 245 (1993), and *Stanzel v. Pierce County*, 150 Wn. App. 835, 852, 209 P.3d 534 (2009), for the proposition that a city can impose reasonable service conditions.

In *Fire Protection District No. 12*, our Supreme Court, relying on statutory interpretation, upheld the City of Yakima's condition that landowners sign a petition in support of annexation before the city could extend its sewer service to outside of the city. 122 Wn.2d at 384, 388.

In *Stanzel*, we held that in the context of providing service extensions outside of city limits "an exclusive provider of sewer service may impose reasonable conditions on its service agreement, including conditions beyond its capacity to provide service." 150 Wn. App. at 852.

Based on these cases and PMC 14.22.050, the City contends that because the City can impose reasonable conditions when issuing water and sewer permits, it can "approve, veto, or finance" part of the proposal, and therefore it is an "agency with jurisdiction" under WAC 197-11-948. WAC 197-11-714(3).

---

[12] PMC 14.22.050 (which governs sewer and water service outside city limits) states,

> (1) Upon submission of a completed application, provision of any required additional information or studies, payment of the application fee, payment of costs and expenses, or arrangements for payment that satisfy the city, the director of development services or designee shall administratively approve or deny the application for service.
> (2) The director or designee shall have authority to impose any reasonable service conditions, and require the applicant to enter into a utility extension agreement. An applicant or service recipient shall fully satisfy any such service conditions, and perform its obligations under any such agreement. If a service recipient fails to continue to satisfy any condition of service, or breaches the agreement, then the city may terminate service after providing notice and a reasonable opportunity to cure, and pursue all remedies that exist in law or in equity.

*Fire Protection District No. 12* and *Stanzel* support the City's contentions that it has approval authority over water and sewer services because they hold that the City has discretion to impose reasonable conditions as a prerequisite to providing sewer or water services and it can withhold service if conditions are not met.

b.     CITY ACTING AS A SERVICE PROVIDER

Respondents argue that the City is a "service provider" and, therefore, the City is not an "agency with jurisdiction." We disagree.

To support their argument that the City is a service provider, Respondents note that "Puyallup is providing water for the Knutson proposal at its own insistence." Joint Br. of Resp'ts at 28. Respondents agree that the Knutson project is partially within the City's water service area and partially within the Valley Water District, but Respondents argue that the City was not willing to modify its service area to allow for a single provider for water. Respondents also contend that other service providers for the proposal include Puget Sound Energy, CenturyLink, Comcast, and DM Disposal and that the City is no different from these providers. Respondents make the policy argument that the City's position would allow any service provider to assume control of the SEPA review process, which would foster delay and disrupt the process.

Respondents do not cite to any case law or authority that say that an agency that has approval authority over permits and also serves as a service provider cannot be an "agency with jurisdiction" under WAC 197-11-948. Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Therefore, we reject this argument.

19

c.      CITY ACTING IN PROPRIETARY RATHER THAN REGULATORY CAPACITY

Respondents further argue that the City is not an "agency with jurisdiction" when it is selling or furnishing water or sewer services and acting in a proprietary capacity rather than a regulatory capacity. Respondents cite to *People for Preservation & Development of Five Mile Prairie v. City of Spokane*, 51 Wn. App. 816, 821, 755 P.2d 836 (1988), and *Hite v. Public Utility District No. 2*, 112 Wn.2d 456, 462-63, 772 P.2d 481 (1989), for this proposition.

Respondents argue that because the City is acting in its proprietary capacity, its ability to deny services is confined to the limitations in the comprehensive plan and applicable code. They say that the City cannot improperly or unreasonably condition services and that "[t]he SEPA review process will not influence the decision-making authority conferred to Puyallup" to provide services. Joint Br. of Resp'ts at 31.

These cases do not, however, discuss SEPA or say that an agency acting in a proprietary capacity is not an "agency with jurisdiction" under WAC 197-11-948. WAC 197-11-714(3) does not distinguish between whether the agency is acting in a proprietary or regulatory fashion. Instead, the regulation defines an "agency with jurisdiction" as an "agency with authority to approve, veto, or finance all or part of a nonexempt proposal (or part of a proposal)." WAC at 197-11-714(3). The City asserts that because it can impose reasonable conditions when issuing water and sewer permits, it has authority to "'approve, veto, or finance'" part of the proposal. Appellant's Reply Br. at 10 (quoting WAC 197-11-714(3)). We agree, based on the plain language of these regulations.

In conclusion, we hold that the City is an "agency with jurisdiction" under WAC 197-11-948 because it has approval authority over the sewer and water services for the project.[13]

## V. ASSUMPTION OF LEAD AGENCY STATUS AFTER MDNS ISSUANCE

The City also asserts that assumption of lead agency status may occur in response to an MDNS. The City argues that an MDNS is a type of DNS "within the plain language of the regulation and the policy of SEPA." Appellant's Reply Br. at 13.

The Respondents argue that under WAC 197-11-948, an "agency with jurisdiction" cannot assume lead agency status following issuance of an MDNS. Respondents also contend that WAC 19-11-948(1) authorizes an "agency with jurisdiction" to assume lead agency status only "upon review of a DNS (WAC 197-11-340)." They rely on the fact that WAC 197-11-948 does not reference WAC 197-11-350, which is the SEPA regulation governing the MDNS process.[14]

We hold that assumption of lead agency status may occur in response to an MDNS under WAC 197-11-948.

---

[13] Because we reach our holding based on the plain language of the regulations, we do not reach the parties' remaining arguments. And to the extent amici raises new issues argued only by amici, we decline to address them. *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 749, 218 P.3d 196 (2009); *see also* RAP 9.12.

[14] The superior court did not reach this issue because the issue was moot in light of the superior court's determination that the City was not an "agency with jurisdiction."

A. PRINCIPLES OF LAW

WAC 197-11-948 sets forth the conditions for an agency to issue a notice of assumption of lead agency status. WAC 197-11-948(1) provides that "[a]n agency with jurisdiction over a proposal, *upon review of a DNS (WAC 197-11-340)* may transmit to the initial lead agency a completed 'Notice of assumption of lead agency status.'" (Emphasis added.)

Our Supreme Court has explained this provision:

> SEPA Rules allow an agency which is "dissatisfied" with a lead agency's DNS to assume lead agency status and make its own threshold determination. WAC 197-11-600(3)(a); WAC 197-11-948. Under the SEPA Rules, therefore, non-lead agencies are not constrained to accept a lead agency DNS but instead may make an independent determination as to whether they are "dissatisfied" with the lead agency's decision. Boundary review boards and other agencies subject to SEPA requirements should use this authority to ensure proper compliance with SEPA.

*King County v. Wash. State Boundary Review Bd. for King County*, 122 Wn.2d 648, 661 n.7, 860 P.2d 1024 (1993). We have also provided that "SEPA administrative rules define an 'MDNS' as 'a DNS that includes mitigation measures.'" *City of Federal Way v. Town & Country Real Estate, LLC*, 161 Wn. App. 17, 40, 252 P.3d 382 (2011) (quoting WAC 197-11-766).

B. ASSUMPTION MAY OCCUR IN RESPONSE TO AN MDNS

1. UNDER THE PLAIN MEANING OF WAC 197-11-948, THE CITY MAY ASSUME LEAD AGENCY STATUS AFTER MDNS ISSUANCE

The City argues that the regulations that define a DNS and MDNS show that an MDNS is a type of DNS. Respondents argue that the City is trying to rewrite WAC 197-11-948 to add the underlined language:

> "An agency with jurisdiction over a proposal, upon review of a DNS (WAC 197-11-340 <u>or WAC 197-11-350</u>) may transmit to the initial lead agency a completed 'Notice of assumption of lead agency status.'"

Joint Br. of Resp'ts at 36. In looking at the related regulations, and specifically WAC 197-11-766, we agree with the City and hold that an MDNS is a type of DNS under WAC 197-11-948 and therefore assumption may occur after MDNS issuance.

The City relies on WAC 197-11-766 to argue that the plain meaning of the regulations show that an MDNS is a type of DNS. WAC 197-11-766 states that a mitigated DNS is "a DNS that includes mitigation measures and is issued as a result of the process specified in WAC 197-11-350."

In response, Respondents argue that the City's interpretation adds language to the applicable rules, contrary to several cases that say that courts do not add language where the legislature has not included them. *Olympic Tug & Barge, Inc. v. Dep't of Revenue*, 163 Wn. App. 298, 306, 259 P.3d 338 (2011); *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Therefore, Respondents argue that the plain language of WAC 197-11-948(1), which says "review of a DNS (WAC 197-11-340)" and does not mention an MDNS nor WAC 197-11-350, does not authorize an "agency with jurisdiction" to assume control over SEPA review following issuance of an MDNS.

In order to determine a regulation's plain meaning, we may look to the context in which the regulation appears, related regulations and statutes, and the statutory scheme of which the regulation is a part, which may disclose legislative intent about the provision. *Bravern Residential II, LLC*, 183 Wn. App. at 777. WAC 197-11-766 specifically says that an MDNS is "a DNS that includes mitigation measures." Case law also supports the argument that an MDNS is "a particular type of DNS." *City of Federal Way*, 161 Wn. App. at 40. This confirms that an MDNS is a type of DNS.

23

2.      RELATED REGULATIONS SUPPORT THE ARGUMENT THAT AN MDNS IS A TYPE OF DNS

The City also relies on SEPA regulations to confirm that an MDNS is a type of DNS.

In response, Respondents argue that "[t]he City relies on other provisions of the SEPA Rules to squeeze the MDNS into the scope of WAC 197-11-948." Joint Br. of Resp'ts at 35. Respondents rely on the fact that this type of DNS (MDNS under WAC 197-11-350) was not included or referenced in the relevant provision—WAC 197-11-948—while other types (WAC 197-11-340) were. Respondents cite case law that says, "'Omissions are deemed to be exclusions'" and when the legislature decides to include certain items in a statute, those not specified are presumed to be deliberately excluded. *Adams v. King County*, 164 Wn.2d 640, 650, 192 P.3d 891 (2008) (alteration in original) (quoting *In re Det. of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597 (2002)); *see Bour v. Johnson*, 122 Wn.2d 829, 836, 864 P.2d 380 (1993). We disagree with the Respondents.

a.      WAC 197-11-310(5)

The City argues that WAC 197-11-310(5) provides that "[a]ll threshold determinations shall be documented in" a DNS or DS but it does not list an MDNS as a separate threshold determination or specifically cite to WAC 197-11-350. Division One of this court has reiterated this when it said,

> WAC 197-11-310(5) mandates that "[a]ll threshold determinations shall be documented in: (a) A determination of nonsignificance (DNS) (WAC 197-11-340) or (b) A determination of significance (DS) (WAC 197-11-360)."

*Moss*, 109 Wn. App. at 21 (alteration in original) (quoting WAC 197-11-310(5)). We agree that this supports the City's argument because it shows that WAC 197-11-310 does not consider an MDNS a separate threshold determination or distinguish between an MDNS and a DNS.

b.      WAC 197-11-340

WAC 197-11-340 is twice cited in the assumption regulation.  *See* WAC 197-11-948.

WAC 197-11-340(2)(a)(iv) identifies an MDNS as a type of DNS when it says, "A DNS under

WAC 197-11-350."  WAC 197-11-350 lays out the process for an MDNS.

The City relies on this to argue that the assumption regulation's (WAC 197-11-948)

citation to WAC 197-11-340, but not WAC 197-11-350, is not meant to exempt MDNSs.  The

City claims that "[i]nstead the citation recognizes that the process that triggers the fourteen-day

period for assuming lead agency status—'review of a DNS'—occurs under WAC 197-11-340,

which encompasses MDNSs."  Br. of Appellant at 31-32.

Respondents argue that WAC 197-11-948's reference to WAC 197-11-340(2)(a) does not

extend the scope of the assumption regulation's authorization to include an MDNS.  Respondents

argue that WAC 197-11-340(2) establishes procedural requirements, which also apply to an

MDNS.  They argue that since "it is purely procedural; it provides no mechanism to issue an

MDNS."  Joint Br. of Resp'ts at 39.

The City replies that neither WAC 197-11-340 nor WAC 197-11-350 defines a DNS or an

MDNS; instead, they are two procedural provisions that work together.  The City emphasizes that

the procedural nature of WAC 197-11-350 is reflected in how an MDNS is defined as a "DNS that

includes mitigation measures and is issued as a result of the process in WAC 197-11-350."  WAC

197-11-766.

We agree with the City that neither WAC 197-11-340 nor WAC 197-11-350 define an MDNS, but instead they are two procedural provisions. Additionally, the language of subsection -340(2) that refers to an MDNS as a type of DNS, supports the City's arguments.[15]

 c.  WAC 197-11-508 AND WAC 197-11-970

In support of its position, the City argues that WAC 197-11-508 and WAC 197-11-970 do not distinguish between MDNSs and DNSs. The City argues that even though these regulations do not specifically say MDNS or cite to the MDNS regulation WAC 197-11-350, there is still a notice and comment period for an MDNS. *See* WAC 197-11-340(2).

WAC 197-11-508(1)(a) requires a SEPA register for "notice of all environmental documents" and refers to only "DNSs under WAC 197-11-340(2)." WAC 197-11-970 states that when a "DNS is issued under WAC 197-11-340(2)," the notice and comment period is 14 days.

The City is correct in that WAC 197-11-508 and WAC 197-11-970 do not distinguish between a DNS and an MDNS. Instead, they refer to DNSs under WAC 197-11-340(2). As explained above WAC 197-11-340(2)(iv) refers to "[a] DNS under WAC 197-11-350 [the MDNS regulation]." This support's the City's position.

 d. County's MDNS

The City also notes that the County issued its April 26, 2017 MDNS under WAC 197-11-340. This WAC does not refer to WAC 197-11-350 (the regulation for the MDNS process). The County's MDNS states that it is issued under WAC 197-11-340(2), which is the same regulation

---

[15] Respondents also argue that a DNS and an MDNS are fundamentally different determinations. But the SEPA handbook shows that an MDNS is a type of DNS when it says that a "[DNS] is issued when the responsible official has determined that the proposal is unlikely to have significant adverse environmental impacts, or that mitigation has been identified that will reduce impacts to a nonsignificant level." SEPA *Handbook*, DEPARTMENT OF ECOLOGY § 2.8, at 37 (2003).

the Respondents associate with a DNS eligible for assumption (WAC 197-11-340). Thus, it appears that the County acknowledged at least in its issuance of its MDNS that an MDNS is a type of DNS. We agree with the City that this supports the City's argument that MDNS is "a DNS (WAC 197-11-340)." WAC 197-11-948(1).

    e.    COURT AND BOARD DECISIONS

Furthermore, the City also says that courts have never suggested that a distinction exists between DNSs and MDNSs for purposes of lead agency assumption. The City relies on *Northwest Steelhead & Salmon Council of Trout Unlimited v. Dep't of Fisheries*, 78 Wn. App. 778, 787, 896 P.2d 1292 (1995), for this proposition. In *Northwest Steelhead*, the City issued a DNS that contained mitigation conditions aimed at minimizing the deterioration of the wetlands. 78 Wn. App. at 781. The court reasoned that "[u]pon reviewing the City's DNS designation, the Department had *the option* to assume lead agency status" under WAC 197-11-948(1). *Nw. Steelhead*, 78 Wn. App. at 787 (alterations in original).

Furthermore, the City argues that decisions from state adjudicatory boards confirm that an agency can assume lead agency status upon the issuance of an MDNS. *See* Order Granting Summary Judgment, *Town of Concrete v. Skagit County*, SHB No. 96-18, 1996 WL 660481, at *9 (Wash. Shorelines Hr'gs Bd. Oct. 4, 1996) ("As the environmental review in this case resulted in one DNS and two MDNS documents, Concrete had three separate opportunities to file the requisite notice of assumption of lead agency status . . . yet, the town did not do so."); Order Granting Summary Judgment, *Repar v. Dep't of Nat. Resources*, FPAB No. 05-001, 2005 WL 2845720, at *7 (Forest Practices Appeals Bd. June 28, 2005) (case involving an MDNS and stating, "If there had been a concern that the information provided in the SEPA process was incorrect, false,

missing, or incomplete, DNR and other reviewing agencies had legal options to address such concerns and even to assume lead agency status"); Order Granting Summary Judgment, *City of Bellingham v. Dep't of Nat. Resources*, PCHB Nos. 11-125 & 11-130, 2012 WL 1463552, at *5 (Pollution Control Hr'gs Bd. April 9, 2012) (case involving a revised MDNS and stating, "Other agencies with jurisdiction have the opportunity to comment on the threshold determination, and can assume lead agency status during the 14 day comment period.").

Respondents note that there is an absence of case law on this issue and that the references to WAC 197-11-948 are "at best" dicta. Joint Br. of Resp'ts at 37. Respondents state that in none of the court or board cases the City relies on did the parties dispute whether WAC 197-11-948 may apply following the issuance of an MDNS. We agree with the Respondents that there is no case law directly on this issue of whether an MDNS is a DNS under WAC 197-11-948. However, Respondents do not cite any authority contradicting these arguments, and the language in these cases and decisions are persuasive.

We hold that based on the plain meaning of WAC 197-11-948, the context of related regulations, and the regulatory scheme as a whole, an "agency with jurisdiction" can assume lead agency status upon issuance of an MDNS.

CONCLUSION

In conclusion, we hold that the City is an "agency with jurisdiction" under WAC 197-11-948 because it has approval and permitting authority over the roadwork and water and sewer services that are part of the proposal. Based on the plain meaning of the regulations, we also hold that WAC 197-11-948 authorizes an "agency with jurisdiction" to assume lead agency status

No. 51501-6-II

following the initial lead agency's issuance of an MDNS. Accordingly, we reverse and remand

for action consistent with this opinion.

JOHANSON, J.P.T.

We concur:

WORSWICK, P.J.

MELNICK, J.