[No. 28537-8-I.   Division One.   November 30, 1992.]

FRANK M. MUSTAPPA, *Appellant,* v. THE DEPARTMENT
OF FISHERIES, *Respondent.*

*Carl F. Roehl, Jr.,* and *Roehl & Roehl, P.S.,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Kathryn Mc-
Leod, Assistant,* for respondent.

FORREST, J. — Frank M. Mustappa appeals the trial judge's
affirmance of the Department of Fisheries' administrative
decision refusing to waive the landing requirement, and thus
denying the application, for Mustappa's commercial salmon
fishing license. We affirm.

Frank Mustappa is a commercial salmon fisherman. He held a Washington salmon purse seine license on his vessel *Cascade* from 1973 to 1988, when he sold the *Cascade*. Because commercial salmon fishing licenses must be held on a specific vessel, Mustappa transferred the license to the only other boat he owned, a small skiff WN 7818U. For the 1988 season, Mustappa transferred the license to a boat leased by his friend, Steve Good. At the end of the season, Mustappa transferred the license back to his skiff. Mustappa arranged with Good to transfer the license for the 1989 season, as well. However, the boat Good had arranged to lease became unavailable to him. Good attempted to lease another boat to transfer Mustappa's license to, but was unsuccessful. Mustappa was made aware in August 1989 that Good's first lease was canceled and that Good was attempting to find another boat. However, Mustappa made no effort to contact Good to make sure he had found a boat. Finally, on or about December 1, 1989, Good contacted Mustappa and told him he had not found a salmon boat and had not transferred Mustappa's license. The 1989 Washington salmon purse seine fishing season closed November 30, 1989.

Mustappa applied to renew the annual license in January of 1990, as required. The requirements for renewing a purse seine commercial salmon fishing license are that (1) the vessel held the license in the previous year, or had the license transferred to it in the previous year; and (2) the vessel landed food fish during the previous year, documented by a valid fish receiving document.[1] The Department of Fisheries (hereafter, the Department) denied Mustappa's application based on the fact that the licensed vessel, Mustappa's skiff WN 7818U, had not landed any food fish the previous season.

Mustappa appealed the decision and appeared before the informal Salmon Advisory Review Board, consisting of three of his peers.[2] The board found:

---

[1]RCW 75.30.120.

[2]The informal hearing was held May 9, 1990.

Mr. Mustappa has held a purse seine license since 1972. The Board felt that Mr. Mustappa had ample time to transfer the license, and that he made no attempt to contact the operator to see that a landing had been made. The Board recommends denial.

Under the standards set forth under "Conclusions of Law," the circumstances described above . . . are not, in the Board's judgment, "extenuating."

The review board recommended that the Department's Director deny Mustappa's application. The Director followed the recommendation[3] and Mustappa appealed. A formal administrative hearing was held September 19, 1990, before Administrative Law Judge Heather Ballash (hereafter ALJ). The ALJ concluded that although Mustappa transferred control of the license to his friend, Good, Mustappa still had the responsibility to ensure the license requirements were satisfied. The ALJ affirmed the Director's decision to deny Mustappa's license application,[4] and Mustappa requested review of the decision. The Director modified the decision only to add another finding of fact, and affirmed the ALJ's decision not to renew Mustappa's license. Mustappa timely appealed to the Superior Court for Whatcom County.

After a bench trial, Judge Michael Moynihan affirmed the judgment of the ALJ, finding that "substantial evidence supports the Findings of Fact and Conclusions of Law of the Director, [and] the administrative decision complies with the law and is not arbitrary and capricious." Order Affirming Administrative Decision (May 9, 1991). Mustappa appealed to this court.

The issue on appeal is whether the Department erroneously interpreted and applied the waiver provision of RCW 75.30.120(2)(a) to Frank Mustappa's application for renewal of a commercial salmon fishing license.

Mustappa challenges the Department's refusal to waive the commercial salmon fishing license renewal requirements of RCW 75.30.120, in part, which provide that a vessel:

---

[3]The Director's decision was dated May 18, 1990.

[4]The decision was dated October 8, 1990.

(a) Which held a state commercial salmon fishing license . . . during the previous year or had transferred to the vessel such a license, and has not subsequently transferred the license . . . to another vessel; and

(b) From which food fish were caught and landed in this state or in another state during the previous year as documented by a valid fish receiving document.

. . . .

(2) The director may waive the landing requirement of subsection (1)(b) of this section if:

(a) The vessel to which an otherwise valid license is transferred has not had the opportunity to have caught and landed salmon; and

(b) The intent of the commercial salmon vessel limitation program established under this section is not violated.

Mustappa contends that the Director's decision must be reversed because he gave an incorrect meaning to "opportunity" and thus "erroneously interpreted or applied the law". RCW 34.05.570(3)(d). Specifically, Mustappa asserts that the Legislature has mandated that the Department may waive the landing requirement if the vessel in question could not have conveniently landed salmon. We disagree.

Mustappa argues that because it was not convenient for the seine skiff to which he had transferred his license to catch salmon (or any other food fish),[5] that he is entitled to be considered for waiver. The argument proves too much. Logically, if it were not convenient for the skiff to catch salmon in 1989, it would be equally inconvenient for it to catch salmon in 1990, and so on. Such interpretation would be clearly contrary to the plain statutory purpose restricting licenses to vessels actively engaged in the fishery.

█ We agree that when a term is undefined in the statute, the court should look to the dictionary and to common usage in light of the context where the term is used. However, Mustappa's reliance on "opportunity" as being a matter of convenience is at most a possible use. The first definition of the word "opportunity" is "a combination of circumstances,

---

[5]The statute provides that if the vessel catches any "food fish", it is entitled to renewal of the license but if it has failed to catch any "food fish" and has to apply for a waiver, then it is required to show that it had no opportunity to catch salmon. RCW 75.30.120.

time, and place suitable or favorable for a particular activity or action". *Webster's Third New International Dictionary* 1583 (1971). *Webster's New World Dictionary of the American Language* 1028-29 (1968) defines "opportunity" as "a combination of circumstances favorable for the purpose; fit time; good chance or occasion." Certainly, owning a salmon license during salmon season is "suitable" for catching salmon and constitutes a "good chance or occasion."

However, we find even clearer guidance for the proper interpretation of "opportunity" from the context in which it is used. Plainly, it would be unjust if an active fisherman lost his license when he wanted to fish and preserve his license but was prevented from doing so by circumstances beyond his control. To prevent such injustice, the Legislature provided in several commercial fishing statutes that the license renewal landing requirements are waived under limited circumstances. Waiver provisions are included in commercial fishing license statutes covering crabs, sea urchins and sea cucumbers,[6] in addition to salmon. All four statutes contain landing requirements, and all four recognize that circumstances may arise which would make it unjust for the holder of the license to lose the license even though he has failed to meet the landing requirement. Thus, all four provide for waiver of the landing requirements under certain circumstances. Three of them provide that "extenuating circumstances" constitute a proper basis for a waiver. RCW 75.30-.130(3); RCW 75.30.210(3); RCW 75.30.250(3). Although the language "had no opportunity" with which we are concerned is different, we find it designed to effectuate the same purpose in preventing unjust loss of a license.

The Director properly implemented legislative policy in holding that an applicant must show that his failure to land salmon was due to "circumstances beyond his control" for him to be eligible for a waiver. This is substantially the same test as "extenuating circumstances" and appropriately

---

[6]RCW 75.30.130(3), 75.30.210(3), and 75.30.250(3), respectively.

fulfills the legislative purpose, which we perceive to be the same in the salmon license provisions as in the other commercial licensing statutes discussed.

The Legislature understandably wanted to prevent license holders from losing their licenses through no fault of their own. But it is hard to imagine what purpose would be served by providing for a waiver when it was merely not "convenient" for the fisherman to catch fish. Plainly, there was nothing to prevent Mustappa from transferring his license from the skiff to a vessel capable of catching salmon. Indeed, that is what he had done the previous year and what he planned to do in 1989. Such circumstances constitute an "opportunity" to have the license on a vessel that can catch salmon. The fact that Good, acting on behalf of Mustappa, was unsuccessful in locating such a vessel does not mean there was no opportunity to have the license used to catch fish. Missed opportunities are a common part of human experience. The Superior Court was correct in finding no error in the Director's decision.

Affirmed.

COLEMAN and BAKER, JJ., concur.