971 P.2d 591 (1999)
94 Wash.App. 196
C.M. TOWLE and Pacific Pride, Inc., a Washington Corporation, Appellant,
v.
WASHINGTON STATE DEPARTMENT OF FISH AND WILDLIFE, Respondent.
No. 22779-7-II.
Court of Appeals of Washington, Division 2.
February 19, 1999.
*592 Fronda Colleen Woods, Asst. Atty. Gen., Olympia, for Respondent.
Jack Lee Burtch, Aberdeen, for Appellant.
HUNT, J.
C.M. Towle appeals denial of a permanent Class A Dungeness crab fishing license for his boat the Hot Shot. Five months after an Administrative Law Judge (ALJ) issued an initial order granting Towle the Class A license based on "extenuating circumstances," the Washington State Department of Fish & Wildlife (Department), sua sponte, reopened the record and denied the Class A license because during one qualifying season the Hot Shot had made one landing less than the number required by a later enacted statute. Towle appealed and the superior court affirmed.
*593 Towle now appeals to this court, arguing that: (1) the time within which the Department Director must issue a final order after an ALJ enters an initial order should be ascertainable or fixed; (2) the Director cannot reject the ALJ's recommendation based on evidence that was not part of the ALJ's record; and (3) the Department cannot consider the fishing history of Towle's other boat, the Pacific Pride, in determining whether the Hot Shot is eligible for a Class A license. The Department responds that the delayed opening of the crab fishing season does not constitute an extenuating circumstance that justifies relaxation of the landing requirement for the Hot Shot. Holding that (1) the Deputy Director violated the Administrative Procedure Act (APA)[1] when she went outside the record in reviewing the ALJ's initial order, and (2) the Deputy Director's finding of a lack of extenuating circumstances is not supported by substantial evidence, we reverse.

FACTS
C.M. Towle has been a commercial crab fisher out of Grays Harbor County since 1971. He owns and crab fishes from two boats, the Hot Shot and the Pacific Pride. The smaller Hot Shot is a combination gill net and crab vessel, originally licensed to make coastal crab landings under an open-ended license.
The Dungeness crab coastal season usually runs from December 1 to September 15. The best month for catching crab is December, during which, according to Towle, typically one-half to three-fourths of any season's catch is made. The Washington State Department of Fisheries delayed opening the 1989-90 season because crab shells were soft. When this closure was implemented in December 1989, the Department neither knew nor announced its duration. Because the closure prevented Towle from fishing for crab, he refitted the Hot Shot for another fishery. Although ultimately the Dungeness crab season opened on January 10, 1990, 40 days after closure, the Hot Shot did not make any crab landings until March 28, 1990.[2] Even so, during that shortened period, it made seven landings and caught 14,131 pounds of crab.
During 1994, the Legislature changed the licensing scheme for crab fishers to protect Washington crab fishers "who have historically and continuously participated in the coastal crab fishery[.]"[3] Laws of 1994, ch. 260, § 1. It is undisputed that Towle possessed a license under the preexisting statutory scheme, a prerequisite to qualifying the Hot Shot for crab fishing under RCW 75.30.350(2)(a). The new statutory amendment requires that "active historical participation" be "proved" by designating on the qualifying license a vessel which meets specific criteria. RCW 75.30.350(2).
Under RCW 75.30.350(2)(a), a person is qualified to receive a Class A license for a particular vessel if the vessel:
Made a minimum of eight coastal crab landings[[4]] totaling a minimum of five thousand pounds per season in at least two of the four qualifying seasons identified in subsection (5) of this section, as documented by valid Washington state shellfish receiving tickets; and showed historical and continuous participation in the coastal crab fishery by having held one of the following licenses or their equivalents each calendar year beginning 1990 through 1993[.]
RCW 75.30.350(2)(a).
Under RCW 75.30.350(5), the qualifying seasons for purposes of this section are:

*594 (a) December 1, 1988, through September 15, 1989;
(b) December 1, 1989, through September 15, 1990;
(c) December 1, 1990, through September 15, 1991; and
(d) December 1, 1991, through September 15, 1992.
Towle applied for a Class A license for the Hot Shot under the new licensing scheme.[5] Towle had made eight landings during the period December 1, 1988, to September 15, 1989, and seven landings during the period December 1, 1989, to September 15, 1990. On December 5, 1994, the Department denied the application because the Hot Shot had not met the requirements of RCW 75.30.350(2)(a).
Towle requested a hearing before an ALJ. After a hearing on August 23, 1995, the ALJ found that, although the Hot Shot had fallen one short of the requisite number of landings, "extenuating circumstances" permitted the Director to reduce the landing requirement of RCW 75.30.350[6] by one. Consequently, in her initial order of October 2, 1995, the ALJ found that Towle was entitled to a Class A license for the Hot Shot.[7] This initial order was mailed to the Assistant Attorney General representing the Department on the same day that it was mailed to Towle, October 2, 1995.
Five months later, on March 4, 1996, the Department's Deputy Director reviewed the ALJ's initial order and, sua sponte, reopened the ALJ's record. The Deputy Director admitted into evidence fish receiving tickets from the Pacific Pride to defeat Towle's contention that extenuating circumstances, namely the delayed crab season opening during the most bountiful part of the 1989-90 season, had prevented the Hot Shot from making the required number of landings.
On May 20, 1996, the Deputy Director issued a Decision Modifying Initial Order, in which she substituted her own findings of fact and conclusions of law for some of the ALJ's; she denied that extenuating circumstances had prevented Towle from making the requisite number of landings and found that it was Towle's own choice, to gear up the Hot Shot for non-crab fishing, that had caused him to fall short by one landing. She ruled that Towle was not entitled to a Class A license for the Hot Shot.[8]
Towle appealed to the Grays Harbor County Superior Court, which, on November 24, 1997, affirmed the Deputy Director's modification of the ALJ's order and her denial of a Class A license to the Hot Shot.

ANALYSIS

I. STANDARD OF REVIEW
RCW 34.05.570(3) governs judicial review of administrative and agency orders. Hensel v. Department of Fisheries, 82 Wash.App. 521, 525, 919 P.2d 102 (1996). In reviewing an administrative action, we sit in the same position as the superior court, applying Administrative Procedure Act (APA) standards to the record that was properly before the agency. See Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993). The party challenging the validity of an agency action bears the burden of demonstrating its alleged invalidity. RCW 34.05.570(1)(a); Northwest Steelhead and Salmon Council of Trout Unlimited v. Department of Fisheries, 78 Wash.App. 778, 785, 896 P.2d 1292 (1995).
We may grant relief from an agency order if: (1) the agency erroneously interpreted or applied the law, RCW 34.05.570(3)(d); (2) the decision is "arbitrary or capricious[,]" RCW *595 34.05.570(3)(i); or (3) the agency's order is not supported by substantial evidence, RCW 34.05.570(3)(e); Hamel v. Employment Sec. Dep't, 93 Wash.App. 140, 966 P.2d 1282, 1285 (1998). When determining whether an agency has committed an error of law, we engage in a de novo review of the agency's legal conclusions. Tapper, 122 Wash.2d at 403, 858 P.2d 494. But we give substantial weight to the agency's interpretation when the subject area falls within the agency's area of expertise. Hensel, 82 Wash.App. at 525-26, 919 P.2d 102. We review findings of fact to see whether they are supported by substantial evidence sufficient to persuade a fair-minded person of the declared premise. Hensel, 82 Wash.App. at 526, 919 P.2d 102.
Here, the Deputy Director committed an error of law in interpreting and applying the "extenuating circumstances" exception to the landing requirement. Additionally, the Deputy Director's finding of no "extenuating circumstances" is not supported by substantial proper evidence. We address this latter error first.

II. RELIANCE ON EVIDENCE OUTSIDE THE RECORD
Towle first argues that the Department engaged in unlawful procedure when the Deputy Director, sua sponte, reopened the record and admitted additional evidence. The Department responds that the Deputy Director, as reviewing officer, is entitled to examine evidence not before the ALJ when she reviews the ALJ's initial order. We disagree.
Under the APA, the "presiding officer" conducts a hearing and enters an "initial order"; here, that function was performed by the ALJ. An initial order can become final automatically if the agency has prescribed such a procedure, or it will become final after review by "the reviewing officer"; here, the reviewing officer was the Deputy Director. What is at issue here is the scope of the Deputy Director's authority in reviewing the ALJ's record and initial order.
Under RCW 34.05.464(4), the reviewing officer "shall exercise all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing" unless "limited by a provision of law[.]" The "reviewing officer shall personally consider the whole record or such portions of it as may be cited by the parties." RCW 34.05.464(5) (emphasis added). The statute does not provide that the reviewing officer may go outside the record or take additional evidence. Moreover, the last sentence of subsection (4) requires the reviewing officer to "give due regard to the presiding officer's [here, the ALJ] opportunity to observe the witnesses." Similarly, although subsection (6) requires the reviewing officer to "afford each party an opportunity to present written argument and ... oral argument[,]" there is no mention of presenting additional evidence to the reviewing officer. The statute nowhere mentions that the reviewing officer may consider additional evidence, and the Department has adopted no regulations expanding the Deputy Director's power as reviewing officer under RCW 34.05.464.[9] Moreover, there are no reported cases that discuss a reviewing officer's ability to examine new evidence in reviewing an ALJ's initial order under RCW 34.05.464.
"In construing a statute, it is always safer not to add to ... the language of the statute unless imperatively required to make it a rational statute." Applied Indus. Materials Corp. v. Melton, 74 Wash.App. 73, 79, 872 P.2d 87 (1994). "Courts cannot read into a statute words which are not there." Coughlin v. Seattle, 18 Wash.App. 285, 289, 567 P.2d 262 (1977). The negative implication from the statute's failure to give the reviewing officer express power to take additional evidence is that the reviewing officer cannot take additional evidence outside the record established by the presiding officer.[10] *596 The absence of case law, and the absence of such regulations governing the Department, support our reading of RCW 34.05.464 as limiting the Director's review here to the record before the ALJ.[11] Therefore, we hold that although the Deputy Director was allowed to reach her own factual and legal conclusions, which may differ from those of the ALJ, such conclusions and findings must be based on the same record; here, the Deputy Director erred in going outside the ALJ record to consider landings made by the Pacific Pride during the period in question.

III. EXTENUATING CIRCUMSTANCES
The Department argues that, even without the additional evidence, substantial evidence supports the Deputy Director's changes to the ALJ's initial order and denial of a Class A license to Towle. Towle argues that the ALJ was correct in her determination that there existed the following extenuating circumstances: The substantially delayed opening of the 1989-90 crab fishing season and resultant preclusion of crab fishing during the most productive weeks merited a one-landing reduction in Towle's Class A license landing requirement. Moreover, as the ALJ noted, even with the shortened season, the Hot Shot landed nearly triple the minimum season poundage requirement from the seven landings that it did make.
The fundamental objective of statutory construction is to ascertain and to carry out the Legislature's intent. Rozner v. Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991). Courts should adopt the interpretation which best advances the legislative intent. Rozner, 116 Wash.2d at 347, 804 P.2d 24. The preamble or statement of intent can be crucial to interpretation of a statute. Spokane County Health Dist. v. Brockett, 120 Wash.2d 140, 151, 839 P.2d 324 (1992). Any doubt as to the meaning of a statute should be resolved in favor of the type of claimant for whose benefit it was passed. See, e.g., Gaines v. Department of Labor & Indus., 1 Wash.App. 547, 552, 463 P.2d 269 (1969). There is no question that Towle is within the class of persons the Legislature sought to protect in reforming the crab licensing system. Laws of 1994, ch. 260, § 1.
Generally, we give "substantial weight ... to the agency's view of the law if it falls within the agency's expertise in that special field of law." Purse Seine Vessel Owners Ass'n v. State, 92 Wash.App. 381, 389, 966 P.2d 928 (1998). But we also have the "ultimate responsibility to see the rules are applied consistently with the policy underlying the statute." Nielsen v. Employment Sec. Dep't, 93 Wash.App. 21, 29, 966 P.2d 399 (1998). The Nielsen court rejected an agency's interpretation of one of its own rules that, although plausible, was inconsistent with the expressed intent of the Legislature. Similarly, here, the Department's interpretation of "extenuating circumstances" is plausible, but inconsistent with the Legislature's purpose.
In enacting RCW 75.30.350 in 1994, the Legislature's purpose was to protect Washington crab fishers "who have historically and continuously participated in the coastal crab fishery[.]" Laws of 1994, ch. 260, § 1. It set forth both poundage and landing criteria for determining which crab fishers would qualify as having historically and continuously participated in the fishery and designated four preceding years as the qualifying seasons. RCW 75.30.350(2), (5). Although Towle has been a crab fisherman since 1971, *597 with some seasons more successful than others, he did not know in 1989 that the Legislature would change the requirements for his crab fishing license five years later. Not knowing how long the crab season would be closed commencing December 1989, but aware that the closure would prevent his catching crab during the very best month of the season, Towle was able to convert one boat, the Hot Shot, to a different fishery so that it could at least be productive.[12] Even with the crab season's late opening and Towle's delayed refitting of the Hot Shot for crabbing, he nevertheless landed 14,131 pounds of crab in 1989-90, in excess of the yet-to-be enacted statutory minimum requirement of 5,000 pounds.
In keeping with this legislative purpose, RCW 75.30.470 permits the reduction of the landing requirement where extenuating circumstances exist. WAC 220-16-410 defines "extenuating circumstances," in pertinent part, as follows:
circumstances that lessen the seriousness or magnitude of an act, and which are to be considered in determining if an individual is to be granted extraordinary relief.... such physical circumstances as weather, age of vessel, and vessel propulsion mechanism, as well as other physical circumstances, may be considered when reviewing a set of facts for extenuating circumstances.
The use of the phrase "such physical circumstances as" indicates that the list of extenuating circumstances is not exclusive; rather, this list merely illustrates some examples, to which other non-listed extenuating circumstances of analogous types may be added.
Here, the evidence demonstrates circumstances concerning the Hot Shot that meet the above definition of "extenuating," while at the same time furthering the statute's purpose of protecting veteran crab fishers such as Towle.[13] That a "delayed season opening" is not specifically listed in WAC 220-16-410 or RCW 75.30.470 does not mean that it cannot constitute an extenuating circumstance. That the delayed opening affected all crab fishers equally makes it no less an extenuating circumstance than the "weather," which the regulation specifically lists as an example of an extenuating physical circumstance and which also likely affects all local fishers equally. Here, the delayed opening during the most bountiful period of the crab season caused the Hot Shot to fall one landing short of the prescribed eight.
The Deputy Director, as reviewing officer, has the ability to substitute her own findings of fact for those of the ALJ so long as the substitutions are supported by substantial evidence. Tapper, 122 Wash.2d at 403-04, 858 P.2d 494. Division One has ruled that RCW 34.05.464 permits a reviewing officer to substitute his or her own conclusions of law for those of the ALJ without providing reasons for doing so. Northwest Steelhead, 78 Wash.App. at 785-786, 896 P.2d 1292. Even so, such substitution cannot be arbitrary and capricious: An action is arbitrary or capricious when the governmental body reaches its decision "willfully and unreasonably, without consideration and in disregard of facts or circumstances." Breuer v. Fourre, 76 Wash.2d 582, 584, 458 P.2d 168 (1969). Under the "facts or circumstances" *598 of this case, the Department's determination that extenuating circumstances did not exist is arbitrary and capricious. And without substantial evidence to support an agency head's changes to an ALJ's initial order, we may reinstate the ALJ's order. See Tapper, 122 Wash.2d at 403, 858 P.2d 494; Northwest Steelhead, 78 Wash.App. at 786, 896 P.2d 1292.

CONCLUSION
We hold that the Deputy Director erroneously interpreted the meaning of "extenuating circumstances" and that the evidence does not support her finding a lack of such circumstances. We further hold that the ALJ correctly read the statute and regulations when she found that delay in the opening of the 1989-90 crab fishing season was an extenuating circumstance, beyond Towle's control. See Mustappa v. Department of Fisheries, 67 Wash.App. 790, 794, 840 P.2d 235 (1992).[14] The Deputy Director's striking of the ALJ's finding of extenuating circumstances and her denial of a Class A license to Towle is not supported by substantial evidence and was arbitrary and capricious. That Towle exceeded the poundage requirement and missed the landing requirement by only one, especially in light of his twenty-plus years in the crab fishery, supports the ALJ's conclusion that Towle fell within the class of historical and continuous crab fishers the Legislature sought to protect. Because substantial evidence does not exist to support the Deputy Director's changes to the ALJ's order, we reinstate the ALJ's order.
Although the Deputy Director was authorized to substitute her own findings of fact and conclusions of law for those of the ALJ, those findings must be supported by substantial evidence and consistent with the law. RCW 34.05.464(4); Northwest Steelhead, 78 Wash.App. at 785-86, 896 P.2d 1292. The Deputy Director here erred in examining new evidence while reviewing the ALJ's initial order. The Deputy Director also erred in finding the nonexistence of extenuating circumstances.[15] We hold that the ALJ was correct and that Towle is entitled to a Class A license.
We reverse the Department's final order and the superior court order affirming it. We remand to the Department for issuance of a Class A license to Towle.
HOUGHTON, J., and BRIDGEWATER, C.J., concur.
NOTES
[1] RCW 34.05.001, et seq.
[2] During the period January 10 to March 28, 1990, however, his Pacific Pride did make several crab landings.
[3] Under RCW 75.30.350(1), either a Dungeness crab-coastal fishery license, a so-called "Class A" license (renewable annually), or a Class B license (renewable through 1999 only), is required to fish for coastal crab in Washington State coastal waters. There are several ways to qualify for a Class A license, only one of which is at issue here.
[4] A "landing," as the term is used in RCW 75.30.350, is implicitly defined as the issuance of a shellfish receiving ticket, under WAC Chapter 220-69, for a load of crab brought in from Washington's coastal waters.
[5] Towle also applied for a Class A license designated to the Pacific Pride. This license was granted and is not a subject of this appeal.
[6] Under RCW 75.30.470, the Director may reduce the landing requirements of RCW 75.30.350 if "extenuating circumstances" exist.
[7] Under RCW 34.05.464(1) the Department is authorized to adopt a time period after which an ALJ's initial order automatically becomes final if the Department does not act. The Department has not designated such a time period.
[8] Towle was, however, allowed to continue to fish for crab with a Class B license for the Hot Shot under RCW 75.30.350(4), but his Class B license will expire permanently on December 31, 1999; it can neither be renewed beyond that date nor converted into a Class A license.
[9] In contrast, we note that other agencies have adopted regulations addressing this matter. Such agencies as the School for the Blind, WAC 72-171-630, and School for the Deaf, WAC 148-171-630, have adopted regulations explicitly permitting their reviewing officers to take additional evidence when reviewing an initial order, in addition to exercising those powers enumerated in RCW 34.05.464.
[10] We note that this reviewing scheme mirrors the manner in which an appellate court reviews and is confined to a trial court record. RAP 9.11 (only in certain enumerated circumstances does the appellate court look at evidence that was not before the trial court).
[11] The Department argues that "record" for purposes of review under RCW 34.05.464(5) is the same as RCW 34.05.476's definition of "agency record," which definition includes more than the record before the ALJ. But RCW 34.05.476 does not speak specifically to the scope of the Department's review powers as does RCW 34.05.464, which is expressly entitled "Review of initial orders."

The Department also argues that the Deputy Director's action in taking additional evidence into the record was permissible under RCW 34.05.461(6). RCW 34.05.461(6), however, does not support the reviewing officer taking additional evidence into the record; rather, that section contemplates that the substitute for a presiding officer who becomes unavailable in the middle of the hearing process will be able to complete hearings if necessary before issuing an order. That is not this case, so RCW 34.05.461(6) is inapplicable.
[12] Although the Department argues on appeal that the record before us does not establish that Towle geared up for some other fishery, this assertion is not accurate. Towle's testimony before the ALJ, while vague, did establish that he was using the boat for some other fishery due to the late opening of the crab season, and therefore could not immediately go back to crabbing when the season opened. We further note that, as part of the proceedings before the ALJ, the Department was given the explicit opportunity to question Towle on his alleged fishing activities leading to his late start in crabbing once the 1989-90 season opened, and that the Department indicated it had no questions in this regard. The Department clearly had the opportunity to elicit any facts damaging to Towle's explanation of his activities, but it chose not to.
[13] In Hensel, we interpreted the sea urchin limited entry statute, RCW 75.30.210, a statute similar in structure and purpose to the coastal crab law limited entry statute at issue here. In that case, we recognized that "extenuating circumstances" would not justify the lowering of a landing requirement where no evidence showed that the applicant had participated in the fishery during qualifying seasons. Hensel, 82 Wash.App. at 527, 919 P.2d 102. Here, Towle has been fishing in Washington's coastal waters since 1971 and made landings in all four of the coastal crab law's qualifying seasons.
[14] Having ruled that consideration of the Pacific Pride's landings was improper, we reject the Department's comparison of the Hot Shot to the Pacific Pride. Even were we to consider this evidence, it would not support the Department's findings. First, the crab licensing scheme is set up according to each specific vessel, and each vessel is required to meet the landing requirements independently. RCW 34.05.350(2). Consequently, the performance of another boat belonging to a licensed applicant cannot count in the applicant's favor; therefore, it would be arbitrary and capricious for the Department to use that information to an applicant's detriment.
[15] Because we find that Towle is eligible for a Class A license, we need not address his argument that the Department violated the APA by waiting five months to issue any response to the ALJ's initial order.