FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 28, 2025

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 28, 2025

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 103768-6 |
| | ) | |
| C.J.J.I., R.A.R. Jr., and C.V.I., | ) | En Banc |
| | ) | |
| | ) | |
| minor children. | ) | Filed August 28, 2025 |
| _____ | ) | |

MADSEN, J.—The Indian Child Welfare Act (ICWA)[1] and Washington State Indian Child Welfare Act (WICWA)[2] apply to involuntary child custody proceedings involving an Indian child.[3] RCW 13.38.020, .040; 25 C.F.R. § 23.103. A party seeking to effectuate an involuntary foster care placement must first prove to the court that "active efforts" were made to prevent the breakup of the Indian family and that such efforts proved to be unsuccessful. 25 U.S.C. § 1912(d); RCW 13.38.130(1).

At issue in this case is whether a juvenile court must find that the Department of Children, Youth, and Families (Department) made "active efforts" to prevent the breakup of the Indian family before entering an order of dependency. In this case, three children

---

[1] 25 U.S.C. §§ 1901-1963.
[2] Ch. 13.38 RCW.
[3] This opinion uses the terms "Indian child" and "Indian family" when referencing statutory language. No disrespect is intended.

were taken from their mother after a court found that continued custody of the children by their mother would likely result in serious emotional or physical damage to the children. In the juvenile court's written dependency order, it found that whether the Department made "active efforts" is a dispositional issue and is not required to establish dependency. The Court of Appeals found that the juvenile court erred when it failed to make an "active efforts" finding at the dependency hearing. It then remanded the case to the lower court to address whether the Department engaged in active efforts, and if the Department did not, then the children should be returned to their mother unless doing so would present a substantial and immediate danger or risk of danger to the children. The Department petitioned for review, arguing that a fact-finding dependency hearing is not a "foster care placement" triggering a required "active efforts" finding. Mot. for Discr. Rev. at 16. We granted review.

Broadly interpreting "foster care placement" respects the purposes of ICWA and WICWA, which aim to prevent the breakup of Indian families, and is supported by the statutory language. Thus, we affirm the Court of Appeals in part and hold that a juvenile court must find that the Department made "active efforts" when entering an order of dependency for children placed outside of their home. Failure to make such findings results in the vacation of the court's dependency order and any subsequent dispositional order and results in the immediate return of the child to their parent or Indian custodian unless doing so would subject the child to immediate danger or threat of such danger. *See* RCW 13.38.160.

BACKGROUND

M.R. is the single mother of 13-year-old C.V.I., 8-year-old C.J.J.I., and 5-year-old R.A.R. Jr. (R.A.R.).[4] C.V.I. and C.J.J.I.'s father is an enrolled member of the Cheyenne River Sioux Tribe (Tribe).[5] C.V.I. is also a member of the Tribe, and C.J.J.I. is eligible for membership. Therefore, C.V.I. and C.J.J.I. meet the definition of "Indian child" as defined in ICWA and WICWA. 25 U.S.C. § 1903(4); RCW 13.38.040(7). R.A.R., who has a different father, is not an Indian child.[6]

After a four-year dependency proceeding, the juvenile court entered orders dismissing dependencies for M.R.'s three children in December 2021. Between March and August 2022, the Department received several reports alleging child abuse and neglect of M.R.'s children. The reports included incidents where M.R. left her children unattended and placed responsibility on C.V.I. to care for C.J.J.I. and R.A.R. Other reports included methamphetamine use, drug paraphernalia in the home, and domestic violence by M.R.'s boyfriend. The Department social worker made several attempts to contact M.R. by visiting her home and work, as well as through text messages, e-mails, letters, and phone calls. The social worker contacted the Tribe and offered M.R.

---

[4] The ages listed are the ages of each child when the juvenile court entered its written order of dependency on January 20, 2023.

[5] C.V.I. and C.J.J.I.'s father has not been present in their life and has not responded to the dependency proceeding.

[6] ICWA and WICWA do not apply to R.A.R.; however, the parties do not discuss how this impacts the dependency proceedings at issue here. We hold that the dependency and dispositional order stands as to R.A.R. since the heightened ICWA and WICWA protections apply only to Indian children.

resources for, among other things, domestic violence, substance use treatment, and childcare.

On September 16, 2022, the Department filed dependency petitions as to C.J.J.I. and R.A.R., alleging that removal from M.R.'s custody was necessary due to a risk of imminent harm.[7] The Department further filed a motion to take custody of the children and place them in shelter care. The juvenile court granted the motion. Four days later, the court held a contested shelter care hearing. The court found that the Department made active efforts to prevent the breakup of the family; however, it did not find that there was a risk of imminent physical damage or harm to the children. Therefore, it ordered the children to be returned to M.R.'s care with conditions.

The following day, the Department filed a dependency petition as to C.V.I. but did not take custody of her. The Department contacted M.R. daily, offering her various services and referrals.

On September 30, 2022, the Department filed motions seeking to place all three children in out-of-home shelter care based on a report to a Department social worker that M.R. struck C.J.J.I. and was using illicit substances. The court held a hearing the same day and found that the Department had made active efforts to prevent the breakup of the family and that the children's out-of-home placement was necessary to prevent imminent physical damage or harm.

---

[7] C.V.I. had run away from home and so she was not included in the dependency petition. The Department worked to help C.V.I. file a "Child in Need of Services" petition.

The juvenile court held three more continued shelter hearings on October 6 and 20, 2022, and November 17, 2022. Subsequent to the hearings, the court entered continued shelter care orders on October 12 and 25, 2022, and November 17, 2022, finding that the Department made active efforts and that continued out-of-home placement was necessary to prevent imminent physical damage or harm. The Tribe intervened before the third continued shelter care hearing.

The juvenile court then held a 3-day fact-finding hearing 74 days after the Department filed the dependency petition for C.J.J.I. and R.A.R. The hearing began on November 29, 2022, and concluded on December 6, 2022. At the hearing, M.R. attempted to question the Department's social worker about what "active efforts" were made to keep the family together. 1 Verbatim Rep. of Proc. (VRP) (Nov. 30, 2022) at 349. The Department objected, arguing that the question was a "dispositional issue" since it is related to placement, not a finding of dependency. *Id*. The court overruled the objection, stating that active efforts are relevant to both disposition and dependency fact-finding. The Department did not call the Tribe's qualified expert witness (QEW) to testify at the hearing; however, M.R. called the QEW to testify in her defense. The QEW testified that "there really hasn't been much active efforts." *Id*. at 489. The Department, for the same reasons previously expressed, objected again. The court sustained the objection.

In an oral ruling, the court found the children to be dependent by at least a preponderance of the evidence. About six weeks after the oral ruling, the court entered

5

its written order of dependency. The court specified in its order that "[t]he evaluation and finding of whether the Department has made active efforts to prevent the breakup of the Indian family is a dispositional issue and not a required finding to establish dependency." Clerk's Papers at 972. The court further ordered that "[u]ntil the court determines disposition, the children will remain in their current placements in the custody of [the Department]." *Id*. at 989.

About six weeks after finding the children dependent and four months after the Department removed the children from their home, the court held a contested disposition hearing on January 27, 2023.[8] At the hearing, the Tribe's QEW submitted a declaration stating that the Department had made active efforts to prevent the breakup of the family. When questioned, the QEW testified that the Department's efforts were not "carried out the way I would have wanted it to. All I know is that they did the best they could with the situation to my knowledge." 2 VRP (Jan. 27, 2023) at 571. Additionally, when asked what efforts the Department made prior to removal of the children, the QEW testified, "I don't think they have." *Id*. at 577.

On February 21, 2023, the court entered a written disposition order, which included findings that the Department made active efforts both before and after filing the dependency petition. It also ordered continued out-of-home care due to the risk of serious emotional or physical damage if the children were returned to M.R.

---

[8] M.R.'s counsel objected to various delays in the proceeding. The court apologized for the delays. However, the January 27, 2023, date for the disposition hearing was agreed on by the parties.

M.R. appealed, arguing that the Department was required to prove "active efforts" at the dependency fact-finding hearing. The Court of Appeals agreed, holding that the juvenile court "erred when not finding active efforts at the dependency hearing." *In re Dependency of C.J.J.I.*, No. 39593-6-III, slip op. at 2 (Wash. Ct. App. Aug. 22, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/395936_ord.pdf. The court then remanded the case to address whether the Department engaged in active efforts and, if not, for the children to be returned to their mother absent a finding of substantial and immediate danger or risk of such danger. *Id*. at 39.

The Department sought reconsideration, which the Court of Appeals granted in part. We subsequently granted the Department's request for discretionary review. We received amici curiae briefing from Tulalip Tribes of Washington and Central Council of the Tlingit & Haida Indian Tribes of Alaska and the Puyallup Tribe of Indians.[9]

ANALYSIS

The question of whether to apply ICWA and WICWA is a question of law we review de novo. *In re Dependency of Z.J.G.*, 196 Wn.2d 152, 163, 471 P.3d 853 (2020). The interpretation of a statute is also a question of law reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002) (the "fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning"). However, the

---

[9] The Cowlitz Indian Tribe, Squaxin Island Tribe, and Nisqually Indian Tribe all subsequently filed motions seeking to join the amicus brief of the Tulalip Tribes and Tlingit & Haida Tribes in support of M.R. The motions were granted.

language in the statute is not to be interpreted in isolation; rather, we further consider "'the context of the statute, related provisions, amendments, and the statutory scheme as a whole.'" *Envolve Pharmacy Sols., Inc. v. Dep't of Revenue*, 4 Wn.3d 142, 155, 560 P.3d 839 (2024) (quoting *PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue*, 196 Wn.2d 1, 7-8, 468 P.3d 1056 (2020)). When language in a statute is susceptible to more than one reasonable interpretation, then it is ambiguous, and it is appropriate to resort to statutory construction and legislative history. *Campbell & Gwinn*, 146 Wn.2d at 12. Notably, ambiguous statutes "are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766, 105 S. Ct. 2399, 85 L. Ed. 2d 753 (1985).

1. The Plain Language Supports Requiring an "Active Efforts" Finding at the Dependency Fact-Finding Hearing When Interpreted in Light of the Intent of ICWA and WICWA

The Department argues that WICWA's plain language requires that a juvenile court find that it made "active efforts" to prevent the breakup of a Native family before effectuating a "foster care placement." Suppl. Br. of Pet'r at 13. The Department asserts that an order of dependency does not effectuate a foster care placement because "it does not address a child's placement whatsoever." *Id.* We disagree.

The legislative intent behind ICWA and WICWA guides our analysis. *See Towle v. Dep't of Fish & Wildlife*, 94 Wn. App. 196, 207, 971 P.2d 591 (1999) (the "preamble or statement of intent can be crucial to interpretation of a statute"). ICWA was enacted by Congress "in response to a lengthy and concerted effort by tribal leaders who sought

8

to end the wholesale removal of Indian children from their families by state and private agencies." *Z.J.G.*, 196 Wn.2d at 164. The house report for ICWA noted that "[s]urveys of States with large Indian populations conducted by the Association on American Indian Affairs . . . indicate that approximately 25-35 percent of all Indian children are separated from their families." H.R. REP. NO. 1386, at 9 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 7530, 7531. It also stated that in Washington, the foster care rate for Native children was 10 times greater than for non-Indian children. *Id*. Many of these children were removed with little to no due process protections. *Id*. at 11.

In enacting ICWA, Congress found "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions." 25 U.S.C. § 1901(4). It also found "that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children" and "that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." 25 U.S.C. § 1901(3), (5).

ICWA exists in large part because Congress determined that it is in the best interest of Native children to be raised by their families whenever possible. Congress formally declared that "it is the policy of this Nation to protect the best interests of Indian

children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families." 25 U.S.C. § 1902.

Several states, including Washington, have enacted legislative provisions relating to ICWA. These legislative efforts have been an attempt to clarify and expand on ICWA's requirements. In Washington, Native American children are being disproportionately removed from their parents' care and placed into foster care at a higher rate than any other racial group. In 2021, the disproportionality index value for American Indian children in Washington foster care was 2.98, which was the highest of any race/ethnicity, indicating their overrepresentation.[10] Therefore, the need for heightened protections for Native families in child custody proceedings is essential.

In 2011, Washington enacted its own version of ICWA, which is meant to strengthen Washington's enforcement of the fundamental protections that ICWA guarantees. LAWS OF 2011, ch. 309, §§ 1-20. The legislature found that "the state is committed to protecting the essential tribal relations and best interests of Indian children by promoting practices designed to prevent out-of-home placement of Indian children that is inconsistent with the rights of the parents, the health, safety, or welfare of the children, or the interests of their tribe." RCW 13.38.030. The provisions within both acts

---

[10] C. Puzzanchera et al., *Disproportionality Rates for Children of Color in Foster Care Dashboard (2010-2021)*, NAT'L COUNCIL OF JUV. & FAM. CT. JUDGES (last updated July 21, 2023) (featuring interactive dashboard with calculation of disproportionality rates for all states), http://www.ncjj.org/AFCARS/Disproportionality_Rates_for_Children_of_Color.aspx.

overlap significantly; therefore, we interpret the acts as analogous unless one is more protective than the other. 25 U.S.C. § 1921; *In re Dependency of J.M.W.*, 199 Wn.2d 837, 844, 514 P.3d 186 (2022). We apply the law that "'provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child.'" *J.M.W.*, 199 Wn.2d at 844 (quoting 25 U.S.C. § 1921); *In re Adoption of T.A.W.*, 186 Wn.2d 828, 844, 383 P.3d 492 (2016) ("the more protective act will supplant the less protective act").

ICWA and WICWA apply to all "child custody proceedings" that involve "Indian children." RCW 13.38.020; 25 U.S.C. § 1903(1), (4). There are four kinds of child custody proceedings: (1) foster care placement, (2) termination of parental rights, (3) preadoptive placement, and (4) adoptive placement. 25 U.S.C. § 1903(1)(i)-(iv); RCW 13.38.040(3)(a)-(d). 25 C.F.R. § 23.2 states that a "'[c]hild-custody proceeding' means and includes any action, other than an emergency proceeding, *that may culminate*" in one of the four proceedings listed above. (Emphasis added.)

The relevant question here is whether a dependency fact-finding hearing is a "foster care placement." Both ICWA and WICWA define the term "foster care placement." ICWA defines it as "any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home . . . where the parent . . . cannot have the child returned upon demand, but where parental rights have not been terminated." 25 U.S.C. § 1903(1)(i). WICWA very similarly defines it as "any action removing an Indian child from his or her parent or Indian custodian for temporary placement in a foster home . . . or suitable other person where the parent or Indian

11

custodian cannot have the child returned upon demand, but where parental rights have not been terminated." RCW 13.38.040(3)(a).

If a dependency fact-finding hearing is a "foster care placement," then ICWA and WICWA's procedural protections are triggered. 25 U.S.C. § 1912(d) requires:

> Any party seeking to effect a *foster care placement* of . . . an Indian child under State law shall satisfy the court that *active efforts* have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

(Emphasis added.) 25 U.S.C. § 1912(e) additionally requires:

> No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

WICWA's language largely mirrors that of ICWA. RCW 13.38.130(1) states:

> A party seeking to effect an involuntary *foster care placement* of . . . an Indian child shall satisfy the court that *active efforts* have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

(Emphasis added.) The Department argues that reading the statute above, along with WICWA's definition of "foster care placement," plainly requires that juvenile courts determine active efforts were made *before* ordering a Native child's out-of-home placement. It also argues that WICWA's definition of "active efforts" supports this plain language reading because the definition is limited to out-of-home placements. WICWA's definition of "active efforts" states:

12

In any dependency proceeding under chapter 13.34 RCW, in which the petitioner *is seeking the continued out-of-home placement* of an Indian child, the department or supervising agency must show to the court that it has actively worked with the parent . . . to engage them in remedial services and rehabilitation programs . . . beyond simply providing referrals to such services.

RCW 13.38.040(1)(a)(ii) (emphasis added). This is an additional provision that is not found in ICWA.

M.R. argues that this more demanding provision of WICWA controls, and that since the dependency fact-finding hearing was a "dependency proceeding" in which the Department sought the "continued out-of-home placement" of the children, the Department needed to prove, and the court was required to find, that active efforts were made to keep the family together. She also argues that the typical time line of a dependency proceeding supports her argument. She notes that although RCW 13.34.110(4) directs that the court hold a disposition hearing immediately after the entry of the findings of fact absent good cause for delay, the reality is that many children have been "placed" outside the home for weeks or months prior to the disposition hearing. The facts of this case serve as an example where all three of M.R.'s children were placed outside their home for about four months before their disposition hearing and approximately six weeks elapsed between the finding of dependency and the disposition hearing.

We agree that in seeking the dependency order, the Department was essentially seeking the continued out-of-home placement of M.R.'s children. Further, the court ordered that the children remain in their current placements in the custody of the

Department until the disposition hearing. That is a placement decision: the court could have alternatively ordered that the children return to their mother's care until the disposition hearing, or it could have declined to find the children dependent and as a result sent the children back to their mother. However, the court made a choice, as reflected in its order, to continue the out-of-home placement of the children. Additionally, this court in *In re Dependency of G.J.A.*, 197 Wn.2d 868, 911, 489 P.3d 631 (2021) held that "the plain language of WICWA *does* require the court to conduct this evaluation [of active efforts] at every hearing when the child is in an out-of-home placement."[11]

Moreover, the purpose of the fact-finding hearing is to determine whether a child is dependent.[12] RCW 13.34.030(6) defines a "dependent child" as any child who

(a) Has been abandoned;
(b) Is abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child;
(c) Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development; or
(d) Is receiving extended foster care services.

---

[11] The Department argues that requiring an active efforts finding in every hearing where a child is in an out-of-home placement will lead to absurd results. However, "this canon of construction must be applied sparingly." *Five Corners Fam. Farmers v. State*, 173 Wn.2d 296, 311, 268 P.3d 892 (2011). If a result is conceivable, it is not absurd. *Id*. It is conceivable here that the legislature in enacting stronger procedural protections in WICWA intended to increase the required active efforts findings throughout the dependency process to ensure the Department provides continuous active efforts to prevent the breakup of Native families.

[12] The Department argues that the statute governing fact-finding hearings, RCW 13.34.110, makes no reference to WICWA. In contrast, the statute governing disposition hearings, RCW 13.34.130, does. However, this is irrelevant where RCW 13.38.040(1)(a)(ii) requires the Department to show that it actively worked with a parent when it is seeking the continued out-of-home placement of an Indian child as it did so at the dependency fact-finding hearing.

The Department argues that a dependency fact-finding hearing is not a "foster care placement" because the hearing only determines whether a child is dependent; it does not address placement or continued placement of a child. The Department further argues that a dependency order does not require a child be in out-of-home shelter care before the fact-finding hearing but, rather, a child may be placed in their parents' care both before and after a dependency fact-finding and disposition hearing. It contends that placement is dealt with at disposition.

The Department cites *In re Dependency of E.M.*, 3 Wn.3d 845, 847, 557 P.3d 264 (2024), for support, since *E.M.* states that "dependency fact-finding hearings and disposition hearings are separate proceedings, subject to different rules, serving different purposes." However, *E.M.* focused on when a court can require a parent to participate in services and held that the court's determination of services is part of the disposition hearing. *Id*. This does not necessarily mean that a court during a dependency hearing cannot review the continued placement of a child outside the home until disposition. Instead, *E.M.* holds that court-ordered services for parents are determined at the disposition hearing after a finding of dependency. *Id*. at 853.

Moreover, a court's decision on dependency naturally impacts the placement of the child. The Department sought the continued placement of M.R.'s three children outside of the home throughout all prior proceedings, then it urged the court to find the children to be dependent. If the court declined to find the children dependent, then the children would have been returned home to their mother's care. More significantly, the

court's dependency order stated that the out-of-home placement of the children be maintained until disposition.[13] That is an order impacting the placement of the children.[14]

In determining whether a parent is capable of adequately caring for their child, it is important to consider what active efforts have been made to try to reunify the parent with

_____

[13] Juvenile courts will often enter a consolidated order of dependency and disposition "as contemplated by statute and reflected in the applicable mandatory pattern form." Pet'r's Answer to Br. of Amicus Curiae Puyallup Tribe of Indians at 12-13. The Department agrees that when juvenile courts enter this consolidated order it must find the Department made "active efforts." If disposition is heard at a later date, such as here, the mandatory pattern form includes a preprinted checkbox that states "the child should remain in the placement and care authority of [the Department] pending further order of the court." Form WPF JU 03.0400, Order of Dependency, ¶¶ 2.4, 4.4 (rev. July 2025), https://www.courts.wa.gov/forms/documents/JU03_0400%20Order%20of%20Dependency_2025%2007.pdf [https://perma.cc/DQ6T-LTKV]. However, the dependency order form includes sections specifically relating to placement, which suggests a placement decision can be made. *Id*. Further, an order maintaining placement is still an order affecting the placement of a child. It prevents a child's return to their family pending another hearing.

[14] The Puyallup Tribe of Indians in its amicus brief notes, "'No child may be placed in shelter care for longer than thirty days without an order, signed by the judge, authorizing continued shelter care.'" Puyallup Tribe of Indians Amicus Curiae Br. in Supp. of Mother at 3-4 (quoting RCW 13.34.065(7)(a)(i)). Here, the most recent order continuing shelter care prior to the fact-finding hearing was entered on November 17, 2022. The disposition hearing did not occur until January 27, 2023. Therefore, more than 30 days elapsed without a new shelter care order. However, the Department asserts that RCW 13.34.065(7)(a)(i) mandates a new shelter care order every 30 days *before* dependency is determined, not after. Whether or not the court's order continuing shelter care expired was not argued by M.R. and goes outside of the scope of the question we granted review on; therefore, we do not consider it. *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 827, 854 P.2d 1072 (1993) (we do not consider issues raised solely by amicus).

The Puyallup Tribe also contends that the court during the dependency fact-finding hearing considered and actually ordered continued out-of-home placement. The Department disagrees and argues that the juvenile court "merely acknowledged that its preceding placement orders, the November 17, 2022 continued shelter care orders, remained in effect until entry of the disposition orders." Pet'r's Answer to Br. of Amicus Curiae Puyallup Tribe of Indians at 4. However, as previously noted, regardless of what the juvenile court intended here, any dependency order maintaining out-of-home care is a placement decision.

their child, and whether the parent was receptive to such efforts. The Department concedes that "juvenile courts can, and should," inquire into the Department's provision of active efforts during the fact-finding hearing, but argues that WICWA does not require the court to make formal findings regarding active efforts. Mot. for Discr. Rev. at 24-25. The Tulalip Tribes of Washington and Central Council of the Tlingit & Haida Indian Tribes of Alaska (Amici Tribes) argue that the testimony of a QEW, the finding of active efforts, and the heightened burden of proof work in tandem and must be applied at the dependency fact-finding.[15] The Amici Tribes contend that "evidence about whether the state's 'active efforts' were successful . . . will be evidence about the parent's ability to safely maintain custody of the child." Amicus Br. of Tribes at 9. Therefore, a finding of "active efforts" is necessary to see both what actions the Department took and how those efforts were received to determine whether a parent can safely continue custody of a child.

The Amici Tribes further argue that QEW testimony at the dependency fact-finding hearing is a critical protection to ensure "that the conduct and parenting choices of Indian families are not evaluated based on 'a white, middle-class standard.'" *Id*. at 7-8 (quoting BUREAU OF INDIAN AFFS., U.S. DEP'T OF INTERIOR, GUIDELINES FOR IMPLEMENTING THE INDIAN CHILD WELFARE ACT 54 (2016)). It is worth noting here that

---

[15] They also argue that the Department's own guidance on its website confirms that QEW testimony is required not later than the dependency fact finding hearing. See *Qualified Expert Witnesses*, WASH. ST. DEP'T OF CHILD., YOUTH & FAMS. ("QEW testimony is required for the earliest 30-day shelter care hearing, if possible, but not later than the dependency fact-finding"), https://dcyf.wa.gov/tribal-relations/icw/qew [https://perma.cc/X3PC-BNAX].

the juvenile court relied on testimony from both the dependency fact-finding hearing and the disposition hearing to determine that "active efforts" were made in its disposition order.

In line with M.R. and the amici's argument, some states, but not all, require an "active efforts" finding at the adjudication hearing, which is their equivalent to our dependency fact-finding hearing. In *State ex rel. Children, Youth & Families Department v. Marlene C.*, 2009-NMCA-058, 146 N.M. 588, 592, 212 P.3d 1142, *aff'd sub nom. In re Esther V.*, 2011-NMSC-005, 149 N.M. 315, 248 P.3d 863, the mother had argued "that the district court was required to make ICWA findings at the adjudicatory stage of the abuse and neglect proceedings." The court ultimately agreed and reversed the lower court's adjudication of neglect as to the mother because the department had failed to prove by "'clear and convincing evidence, including testimony of qualified expert witnesses,'" that the continued custody of the child by the parent would likely "'result in serious emotional or physical damage.'" *Id*. at 594 (quoting 25 U.S.C. § 1912(e)).

The court's decision was affirmed in *In re Esther V.* The court held that in a contested adjudication of abuse or neglect, to which ICWA applies, the trial court was required to make the findings of fact required under ICWA's "active efforts to prevent the breakup of the Indian family" requirement and the "likely to result in serious damage" requirement at the adjudication stage. *In re Esther V.*, 149 N.M. at 324. It reasoned that the adjudication hearing is best suited for addressing the requirements of 25 U.S.C. §

18

1912(d) and (e) because it "is the procedural phase that affords the Indian parent and tribe the most procedural due process protection and best accommodates the requirements of § 1912." *Id*. Further, because it is an evidentiary hearing, it is a practical time to present QEW testimony. *Id*. at 326. In contrast, the dispositional hearing does not provide parents with the same due process protections afforded at adjudication hearings since the rules of evidence do not apply.[16] *Id*. at 327. Rather, at the disposition hearing, the court can rely on information that would not be considered competent evidence had it been offered at the adjudicatory hearing. *Id*.

The Supreme Court of New Mexico makes a persuasive argument. ICWA and WICWA were enacted in part to ensure that Native families received due process when a child was removed from the home. Furthermore, the fact-finding hearing is the best phase to adjudicate active efforts and consider QEW testimony, and Native parents and children are afforded greater protections due to the application of the rules of evidence.

Another court in Oklahoma joined the court in *In re Esther V*. and held that "for the same reasons [we] find the adjudicatory hearing is the best procedural stage in which to make the findings required by § 1912 for foster care placements. Consequently, the trial court's finding [that] State was required to prove active efforts under § 1912(d) at

---

[16] The Department argues that requiring an active efforts determination at the dependency fact-finding leads to an absurd result since the rules of evidence will apply to an active efforts determination at the fact-finding hearing but not at a disposition hearing. Mot. for Disc. Rev. at 30-31. However, it is not an absurd result for the rules of evidence not to apply to temporary placement decisions. A dependency fact-finding hearing, on the other hand, has higher stakes— a child may be declared dependent; thus it is necessary to afford additional due process protections to the parties.

the adjudicatory hearing is affirmed." *In re T.S.*, 2013 OK CIV APP 108, 315 P.3d 1030, 1046. We join this line of cases and find that our dependency fact-finding hearing, which affords heightened due process protections, is the best procedural phase to require "active efforts" findings. This allows the court to look at "active efforts" for the purpose of determining whether the Department has made sufficient attempts to reunite the family and helps the court determine whether the parent is fit to care for the child.

For these reasons, we agree with M.R. that the Department must prove, and a juvenile court must consider, whether "active efforts" were made at a dependency fact-finding hearing when a child is currently placed outside of the home[17] and the Department is seeking an order of dependency.[18]

2.      Remedy

M.R. asks us to review the remedy provided by the Court of Appeals. She argues that when the Department improperly removes or maintains a child's out-of-home placement without proving active efforts, the appropriate remedy is dismissal of the

---

[17] A finding of "active efforts" is limited to instances where the Native child is placed outside of the home because the definition of "active efforts" in RCW 13.38.040(1)(a)(i)-(iii) does not contemplate instances where the Department is seeking placement of a Native child with the family. Rather, the statute requires, at a minimum, that the Department show it actively worked with the parent when it seeks out-of-home placement or continued out-of-home placement, or is seeking to terminate parental rights. *See* RCW 13.38.040(1)(a)(i)-(iii).

[18] M.R. argues that although the Court of Appeals relied on WICWA to support its holding that a finding of active efforts is required at the dependency fact-finding stage, ICWA also demands the same result. The brief by the Amici Tribes makes the same argument. Since WICWA resolves the question before us, we do not analyze whether ICWA compels the same result.

dependency petition in accordance with 25 U.S.C. § 1920 and RCW 13.38.160.[19]  Both

statutes require the same relief.  RCW 13.38.160 states:

> If a petitioner in a child custody proceeding . . . improperly retained custody . . . the court shall decline jurisdiction over the petition and shall immediately return the child to the child's parent or Indian custodian *unless* returning the child to the parent or Indian custodian would subject the child to substantial and immediate danger or threat of such danger.

(Emphasis added.)

The Department, in contrast, argues that the remedy provided by the Court of

Appeals did not comply with *In re Dependency of A.L.K.,* 196 Wn.2d 686, 478 P.3d 63

(2020), because the appropriate remedy was to affirm the dependency order, vacate only

the out-of-home placement in the dispositional order, and remand to the juvenile court to

immediately return the child to their parent's care unless doing so would subject them to

substantial and immediate danger or threat of such danger.

We hold that the proper remedy is to vacate the dependency and dispositional

orders and to return C.J.J.I. and C.V.I. to their mother unless doing so places them in a

substantial and immediate danger or threat of danger.

---

[19] M.R. further argues that the remedy provided in *In re Dependency of A.L.K.*, 196 Wn.2d 686, 703, 478 P.3d 63 (2020), is incorrect and harmful.  The Department argues that we should reject M.R.'s invitation to review the decision made in *A.L.K.* since she raises the argument for the first time in her answer to the motion for discretionary review.  "If the party wants to seek review of any issue that is not raised in the petition for review, including any issues that were raised but not decided in the Court of Appeals, the party must raise those new issues in an answer."  RAP 13.4(d).  At the Court of Appeals, M.R. argued that when there is an improper removal, the remedy is immediate return home of the child, and she cited *A.L.K.* for support.  M.R. did not raise the argument that the court's remedy in *A.L.K.* is "'incorrect and harmful'" until her supplemental brief.  Resp't Mother's Suppl. Br. at 28-29 (quoting *State v. Barber*, 170 Wn.2d 854, 864, 248 P.3d 494 (2011)).  She has failed to timely raise and adequately brief the issue; therefore, we decline to review it.

In *A.L.K.*, the trial court ordered the children to be dependent and found that "'active efforts were made to avoid removal, as set out in testimony and [d]eclaration of Qualified Indian Expert.'" *Id.* at 694 (alteration in original) (quoting record at 183). It also found that continued custody by the mother "'is likely to result in serious emotional or physical damage to the child.'" *Id.* (quoting record at 180). The mother appealed the finding that active efforts were made. *Id.* This court held that the Department did not engage in active efforts to prevent the breakup of the family prior to removing her Native children. *Id.* at 702. The court held that the appropriate remedy was "to affirm the dependency order, but to vacate the dispositional order's out-of-home placement and to remand for a determination of whether returning the children would subject the children to substantial and immediate danger or threat of danger." *Id.* at 703.

This case is factually and procedurally different from the case before us. It appears that the trial court in *A.L.K.* made the active efforts finding at the conclusion of the dependency fact-finding hearing. In contrast, here, the disposition hearing was conducted about six weeks after the finding of dependency. Therefore, the court's dependency ruling effectively continued the children's out-of-home foster care placement until their dispositional hearing. Further, the court refused to make an active efforts finding and sustained the Department's objection at the fact-finding hearing when M.R. attempted to question the Department about what active efforts it had made to prevent the breakup of the family. Therefore, vacating the dependency order here is warranted, and

*A.L.K.* supports remanding the case for a determination of whether returning the children would subject the children to substantial and immediate danger or threat of danger.

Although the Department here made an active efforts finding at the disposition hearing, that did not relieve it of its duty to inquire into active efforts at the dependency fact-finding stage. The court should monitor these continuous efforts at every opportunity where a child is placed outside the home or when the court maintains a child's placement outside the home. Considering the Department's sustained objection to questions about active efforts, the heightened due process protections that should have been afforded at the fact-finding hearing, and the importance of knowing what active efforts were made and how those efforts were received to evaluating parental fitness, we conclude that the dependency order must be vacated. A dependency fact-finding hearing should inquire into what active efforts were made, and also include a determination, supported by clear and convincing evidence, including QEW testimony, that continued custody with the parent "is likely to result in serious emotional or physical damage to the child." RCW 13.38.130(1)-(2).

Since the dependency ruling here effectuated a continued out-of-home foster care placement and did not include a finding of active efforts, we hold that the proper remedy here is reversal of the dependency order, which necessarily also vacates the subsequent dispositional order. Given the vacation of both orders, the children are to be immediately returned to M.R. unless returning the children to her would subject them to substantial and immediate danger or threat of such danger in accordance with RCW 13.38.160.

CONCLUSION

We affirm the Court of Appeals' holding that the juvenile court must review and find active efforts during every hearing where it seeks to place or seeks the continued placement of an Indian child outside of the home; this includes dependency fact-finding hearings where the children are currently residing outside of the home. We remand for the lower court to vacate the dependency and disposition orders as to C.J.J.I. and C.V.I. and return the children to their mother unless doing so would subject them to substantial and immediate danger or threat of such danger.

_____
Madsen, J.

WE CONCUR:

_____
Stephens, C.J.

_____
Johnson, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Yu, J.

_____
Montoya-Lewis, J.

_____
Whitener, J.

_____
Mungia, J.